

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>      Recurrido<br><br><br>            v.<br><br><br>Carlos Hernández Villanueva<br><br>      Peticionario | Certiorari<br><br>2010 TSPR 203<br><br>179 DPR ____ |
| --- | --- |

Número del Caso: CC-2008-566


Fecha: 23 de septiembre de 2010


Tribunal de Apelaciones:

           Región Judicial de Carolina/Guayama Panel XIII


Juez Ponente:     Hon. Luis A. Rosario Villanueva


Abogada de la Parte Peticionaria:

             Lcda. Zinia I. Acevedo Sánchez

Oficina de la Procuradora General:

             Lcda. Zaira Z. Girón Anadón
             Subprocuradora General

Materia: Desvio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

El Pueblo de Puerto Rico

    Recurrido

    v.                       **CC—2008—566**      Certiorari

Carlos Hernández Villanueva

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 23 de septiembre de 2010.

En el presente caso nos corresponde determinar si el principio de especialidad estatuido en el Art. 12 del Código Penal de 2004, *infra*, prohíbe el que un tribunal de instancia pueda conceder una libertad a prueba según la ley de Sentencia Suspendida y Libertad a Prueba, *infra*, en lugar del desvío que provee el Art. 404(b) de la Ley de Sustancias Controladas, *infra*. Por los fundamentos que se exponen en esta opinión, contestamos esa interrogante en la negativa.

**I**

Los hechos de este caso son relativamente sencillos: después de un juicio en su fondo por tribunal de derecho, el peticionario fue declarado

culpable por dos cargos contenidos en el Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2404, esto es, posesión ilegal de una sustancia controlada. En el momento de ser hallado culpable, el peticionario, a través de su defensa, le solicitó al Juez que considerara concederle los beneficios del programa de desvío que establece el inciso (b) del referido Art. 404, 24 L.P.R.A. sec. 2404(b)(1). El Ministerio Público señaló en ese momento que su posición en torno a la solicitud del peticionario dependería del informe presentencia.

El informe presentencia de la Oficina de Oficiales Sociopenales recomendó que al peticionario se le concediera el beneficio de una libertad a prueba. El día del acto de la lectura de sentencia, a pesar de la solicitud hecha por el peticionario en el momento en que se le encontró culpable para que se le concediera el desvío del Art. 404(b)(1), el juez de instancia dictó sentencia concediéndole el beneficio de libertad a prueba, pero a través de la Ley de Sentencia Suspendida y Libertad a Prueba (Ley de Sentencia Suspendida),[1] sujeto a que el ahora probando, completara un tratamiento para la adicción.[2]

Inconforme, el peticionario recurrió mediante recurso de *certiorari* al Tribunal de Apelaciones alegando que la

---

[1] Ley Núm. 259 de 3 de abril de 1946, 34 L.P.R.A. sec. 1026 *et seq.*

[2] El foro de instancia dictó sentencia condenando al peticionario a tres años de cárcel por cada delito, a cumplirse de manera concurrente, y suspendió los efectos de la sentencia bajo la condición ya señalada, entre otras que comúnmente se requieren.

acción del Tribunal de Primera Instancia al no concederle el programa de desvío del Artículo 404(b)(1) de la Ley de Sustancias Controladas, *supra*, violaba el principio de especialidad y el debido proceso de ley. El Tribunal de Apelaciones se negó a expedir el recurso basado esencialmente en la discreción de la que gozan los jueces de instancia en la determinación de conceder los beneficios de una sentencia suspendida. Al así hacerlo, el foro apelativo intermedio no consideró el argumento relacionado al principio de especialidad y la alegada violación al debido proceso de ley.

Es de ese dictamen que el peticionario recurre ante nuestra consideración, esbozando como único error el siguiente:

> Erró el Honorable Tribunal de Apelaciones al denegar el auto de certiorari solicitado y confirmar la resolución recurrida, la cual violenta el principio de especialidad establecido en artículo 12 (A) del Código Penal Vigente, en violación del debido proceso de ley.

## II

### El Art. 404(b)(1) de la Ley de Sustancias Controladas vis a vis el Art. 2A de la Ley de Sentencia Suspendida

En *Pueblo v. Martínez Lugo*, 150 D.P.R. 238, 246 (2000), señalamos que aunque el mecanismo de desvío provisto por el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, es "análogo al provisto en el estatuto general de Sentencias Suspendidas, tiene sustanciales diferencias". (Énfasis y citas omitidos.) En el presente caso reiteramos

esas diferencias sustanciales pero, esta vez, para enfatizar la forma en que estos estatutos se complementan en la búsqueda del mecanismo más conveniente para la rehabilitación de un probando, decisión que, adelantando conclusiones, recae en la única y sana discreción del Tribunal de Primera Instancia.

El Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, provee el mecanismo de libertad a prueba conocido comúnmente como "desvío", el cual tiene un fin terapéutico y eminentemente rehabilitador.[3] En lo pertinente el texto de este artículo señala lo siguiente:

> ***(b)(1)*** *Si cualquier persona que no haya sido previamente convicta de violar el inciso (a) de esta sección, o de cualquier otra disposición de este capítulo, o de cualquier ley de los Estados Unidos, relacionada con drogas narcóticas, marihuana, o sustancias estimulantes o deprimentes, es hallada culpable de violar el inciso (a) de esta sección, bien sea después de la celebración del juicio o de hacer una alegación de culpabilidad, **el tribunal podrá**, sin hacer pronunciamiento de culpabilidad y con el consentimiento de tal persona, suspender todo procedimiento y someter a dicha persona a libertad a prueba bajo los términos y condiciones razonables que tenga a bien requerir, y por un término fijo de tres (3) años.* (Énfasis suplido.)

Como podemos ver, este artículo establece primeramente tres condiciones *sine qua non* para que el tribunal sentenciador pueda otorgar sus beneficios a un sentenciado: (1) la persona tiene que haber sido encontrada

---

[3] *Ford Motor v. E.L.A.,* res. el 11 de agosto de 2008, 174 D.P.R. ___, 2008 T.S.P.R. 137; *Pueblo v. Martínez* Lugo, 150 D.P.R. 238, 246 (2000); *Martínez Reyes v. Tribunal Superior,* 104 D.P.R. 407, 409(1975).

culpable por el inciso (a) del propio artículo (posesión de alguna sustancia controlada); (2) la persona no puede tener una convicción previa por ese artículo, ni por cualquier otro delito comprendido en la propia ley o en cualquier ley de los Estados Unidos relacionada con drogas narcóticas, marihuana, o sustancias estimulantes o deprimentes; y, por último, (3)tiene que mediar el consentimiento de la persona que se ha de beneficiar del mecanismo.

Una vez se dan estos requisitos, el tribunal puede, sin hacer pronunciamiento de culpabilidad, suspender todo los procedimientos para –como se infiere más adelante en el texto del artículo– someter a dicha persona a libertad a prueba bajo un programa de tratamiento y rehabilitación. Si la persona completa exitosamente el programa de tratamiento y rehabilitación, y el tribunal, previa la celebración de una vista a esos efectos se convence de que ésta se encuentra realmente rehabilitada[4], entonces ésta **quedará exonerada y la causa criminal en su contra será totalmente sobreseída**.[5]

De manera que, el resultado neto de una culminación exitosa del mecanismo de desvío provisto por el Art.

---

[4] En *Pueblo V. Román Santiago*, 109 D.P.R. 485, 488 (1980), señalamos que la primera oración del tercer párrafo [del Art. 404(b)(1)] permite que, aun cuando el probando no haya violado ninguna de las condiciones impuéstasle para su libertad a prueba, el tribunal conserva su discreción para exonerarle. Ello supone que, concluido el período de libertad a prueba, se evalúe la conducta observada por el probando durante dicho período y se determine entonces, luego de una vista, si procede o no su exoneración. **Es decir, debe demostrarse que el probando se ha rehabilitado**. (Énfasis suplido.)

[5] *Ford Motor v. E.L.A., supra*; *Pueblo v. Martínez Lugo, supra*.

404(b)(1) de la Ley de Sustancias Controladas, *supra*, es que el ciudadano **nunca adviene a ser un convicto**, para efectos de las incapacidades o descalificaciones que imponen las leyes a los convictos por la comisión de algún delito.[6] Además, el ciudadano tendrá derecho a que el Superintendente de la Policía le devuelva cualquier récord de huellas dactilares y fotografías que obren en poder de la Policía de Puerto Rico, tomadas en relación con la violación de ese artículo.[7]

Por su parte, prácticamente desde el momento mismo de su promulgación y de manera reiterada, hemos señalado que a la **Ley de Sentencia Suspendida**, *supra*, también le anima un propósito preeminentemente rehabilitador.[8] El Art. 2 de esta Ley dispone que el juez **podrá** suspender los efectos de una sentencia si concurren todos los requisitos que el propio artículo enumera,[9] para conceder, conforme lo dispone

---

[6] Art. 404(b)(1) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. 2404(b)(1).

[7] *Íd.*

[8] *Pueblo v. Torres Serrano*, res. el 2 de febrero de 2009, 175 D.P.R. ___, 2009 T.S.P.R. 20; *Pueblo v. Vázquez Carrasquillo*, res. el 20 de junio de 2008, 174 D.P.R.___, 2008 T.S.P.R. 109; Pueblo *v. Zayas Rodríguez*, 147 D.P.R. 530, 549 (1999); *Vázquez v. Caraballo*, 114 D.P.R. 272, (1983).*Pueblo v. Vélez*, 76 D.P.R. 142, 148(1954); *Alcalá v. Corte*, 66 D.P.R. 430, 433 (1946).

[9] No habremos de reseñar los requisitos enumerados en el artículo, por no estar en controversia en el caso de autos que el peticionario califica para los dos mecanismos de libertad a prueba que son motivo de la controversia.

el Art. 53 del Código Penal de 2004,[10] una libertad a prueba como pena alternativa.[11]

En resumen, la Ley de Sentencia Suspendida, *supra*, instituyó en nuestra jurisdicción un mecanismo mediante el cual una persona convicta de algún delito no incluido en el Art. 2 de la propia Ley, pueda cumplir su sentencia –en su totalidad o parte de ésta– fuera de la institución penal. Esto, claro está, a condición de que observe una buena conducta y cumpla con todas las condiciones impuestas por el tribunal sentenciador.[12]

Sin embargo, y distinto al mecanismo de desvío del Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, la Ley de Sentencia Suspendida, *supra*, requiere –por definición– que el Tribunal dicte sentencia, por lo que la persona se convierte primero en un convicto, para entonces poder acogerse a los beneficios de este mecanismo.

Por lo tanto, el desvío que provee el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, ciertamente concede una ventaja sobre el Art. 2 de la Ley de Sentencia Suspendida, *supra*, pues la persona que culmina exitosamente

---

[10] 33 L.P.R.A. sec. 4681.

[11] Además, el Art. 2A de la Ley de Sentencia Suspendida, *supra*, 34 L.P.R.A. sec. 1027a, por su parte, lo siguiente:

Como condición a la libertad a prueba, la persona sentenciada habrá satisfecho la pena especial al Fondo de Victimas dispuesta en el Código Penal del Estado Libre Asociado de Puerto Rico, consentirá a someterse a un programa regular para la detección de presencia de sustancias controladas mediante pruebas confiables que permitan su orientación, tratamiento, y rehabilitación...

[12] *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530, 535-536; (1999); *Pueblo v. Pacheco Torres*, 128 D.P.R. 586, 589 (1991); *Vázquez v. Caraballo*, *supra,* pág. 278.

su programa de desvío no se le afecta su récord penal, no empece haber sido declarada culpable del delito de posesión de una sustancia controlada. Sin duda, tal beneficio por parte del legislador respondió al carácter rehabilitador que hemos señalado ostenta ese artículo.[13]

Ahora bien, el 17 de enero de 1995, mediante la aprobación de la Ley Núm. 7, la Asamblea Legislativa enmendó el referido Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, para incluir una última oración a su primer párrafo, la cual dispone lo siguiente: "El tribunal apercibirá al acusado que, de abandonar el programa de tratamiento y rehabilitación **será sancionado conforme a lo dispuesto en la sec. 4428 del Título 33**". (Énfasis suplido.)[14]

La Sección 4428 del Título 33 a la que se refiere esta última oración del Art. 404(b)(1), configuraba el antiguo delito de fuga -Art. 232- del pasado Código Penal, el cual fue sustituido por el nuevo delito de fuga (Art. 281 del nuevo Código Penal de 2004, 33 L.P.R.A. sec. 4909). Con su aprobación, la Ley Núm. 7 de 17 de enero de 1995, además de enmendar el Art. 404(b)(1), también enmendó el antiguo delito de fuga para añadirle dos nuevos incisos, de manera que se configurara como delito el hecho de que la

---

[13] Véase Informe Conjunto de las Comisiones de lo Jurídico Penal y de Salud y Bienestar del Senado sobre el P. de la C. 1323 de 7 de junio de 1971, 3ra Sesión Ordinaria, 6ta Asamblea Legislativa, págs. 20-21 (posteriormente aprobado como la Ley de Sustancias Controladas, *supra*).

[14] Ley de Sustancias Controladas, *supra*. Énfasis nuestro. **Nótese que la referida enmienda impuso al juez que concede el desvío la obligación de hacer esta advertencia.**

persona se fugara estando sometida a tratamiento de rehabilitación bajo un programa de desvío, ya fuera a través de la Regla 247.1 de las de Procedimiento Criminal o del Art. 404(b) de la Ley de Sustancias Controladas, *supra*.

Como ya señalamos, el Art. 232 del Código Penal de 1974 fue sustituido por el Art. 281 del nuevo Código Penal, *supra*, el cual establece lo siguiente:

> Toda persona sometida legalmente a detención preventiva, a pena de reclusión o de restricción de la libertad, o a medida de seguridad de internación, a tratamiento y rehabilitación en un programa del Estado Libre Asociado o privado, supervisado y licenciado por una agencia del mismo, o a un procedimiento especial de desvío bajo la Regla 247.1 de Procedimiento Criminal o **bajo una ley especial**, que se fugue o que se evada de la custodia legal que ejerce sobre ella otra persona con autoridad legal y toda persona que actúe en colaboración con ella, incurrirá en delito grave de cuarto grado. (Énfasis suplido)

La Profesora Nevares Muñiz, al identificar el origen de esta nueva versión del delito de fuga -Art. 281-, cita el *Informe de la Medida* del P. del S. 2302, Comisión de lo Jurídico, pág. 65, el cual dispone lo siguiente:

> En el nuevo tipo de fuga la redacción del Artículo 232 vigente se modifica para que su redacción precisa comprenda todas las modalidades que se mencionan expresamente y las creadas en el propuesto Código. **Se incluye cualquier programa de desvío por ley especial** ante una causa criminal...[15]. (Énfasis suplido.)

El elemento principal del delito de fuga lo constituye la evasión por parte del sujeto activo de la

---

[15] D. Nevares Muñiz, <u>Nuevo Código Penal de Puerto Rico</u>, Hato Rey, Instituto para el Desarrollo del Derecho, 2005-2005, pág. 358*op. cit.,* pág. 358. (Énfasis del que suscribe).

custodia legal a la cual está sometido.[16] Con relación al Art. 281 del nuevo Código Penal, *supra*, Nevares Muñiz señala que se encuentra bajo custodia legal "toda persona sometida a un programa de tratamiento y rehabilitación de desvío bajo la Regla 247.1 de Procedimiento Criminal o el **Artículo 404(b) de la Ley de Sustancias Controladas**".[17] (Énfasis suplido.)

Concluimos, entonces, que el delito de fuga que establece el Art. 281 del Código Penal, *supra*, dispone que éste se configura por toda aquella persona que se evade mientras está sometida a tratamiento y rehabilitación en un programa de desvío, provisto por el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*.

En cuanto a la enmienda que añadió la última oración del primer párrafo del Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, y que señala que el probando que abandone el tratamiento mientras se aprovecha de este desvío será sancionado conforme a lo dispuesto en el delito de Fuga, la Exposición de Motivos de la Ley Núm. 7 de 17 de enero de 1995, señala lo siguiente:

> Con frecuencia, se envía a los acusados a instituciones privadas tales como los Hogares C.R.E.A., Inc, [Sic] y otros programas sin fines de lucro para tratamiento por el tiempo que determine el tribunal bajo los mecanismos de desvío mencionados. [Art. 404(b) y Regla 247.1]. **En estos casos, al no haberse dictado sentencia, cuando la persona se retira del tratamiento**

---

[16] *Rivera v. Delgado*, 82 D.P.R. 692, 695 (1961).

[17] D. Nevares Muñiz, *Nuevo Código Penal de Puerto Rico*, *op. cit.,* pág. 359.

**ordenado por el tribunal se reconoce como abandono y no como fuga.**

**La situación descrita, además de representar un gran peligro para la comunidad, constituye un derroche de los recursos del Pueblo de Puerto Rico.** (Énfasis suplido.)

Aunque, como hemos señalado, el desvío que provee este Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, tiene un propósito terapéutico y eminentemente rehabilitador, la Exposición de Motivos de la Ley Núm. 7, *supra*, que enmendó este artículo para añadir este *caveat*, nos muestra que el Legislador no concedió en esa enmienda la misma preeminencia a ese propósito rehabilitador. Así lo confirma el Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes que, aunque en otro momento menciona que ésta operaría como un disuasivo al probando, señala lo siguiente:

en la práctica, y según admitiera el Departamento de Justicia ante esta Comisión, en muchas ocasiones los tribunales se muestran renuentes a procesar como prófugos a aquellos que estando en un programa de desvío abandonan el mismo sin autorización del Tribunal. La aprobación de esta medida facilitará la labor del Ministerio Público en este sentido y evitará que por meros tecnicismos estos casos no prosperen en los Tribunales.[18]

Por otro lado y más importante aún, el Informe de la Comisión de lo Jurídico Penal también señala que, en aquel entonces –1994–, el 26.35% del total de personas referidas como parte de algún programa de desvío se fugó de la

---

[18] Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes sobre el P. de la C. 1066 de 1 de diciembre de 1994, pág. 4.

institución.[19] Esto significa que al menos **una de cada cuatro** personas que se comprometían ante un juez de instancia a permanecer en tratamiento si se le concedía el beneficio del desvío que provee este Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, "saltaban la verja" y abandonaban el programa de rehabilitación.

Lamentablemente, nada nos mueve a pensar que al día de hoy esa no continúe siendo la situación. **Como se ha reconocido, la adicción a las drogas o la narcodependencia, como condición patológica crónica, se vincula con una tendencia natural a la recaída.**[20] En ese contexto, **es un fenómeno muy frecuente el abandono por parte de una persona narcodependiente de su programa de rehabilitación, antes que el mismo culmine.**[21] De hecho, la experiencia en las salas criminales graves de nuestra jurisdicción es que, en ocasiones, la persona adicta a drogas **ha abandonado varios programas de rehabilitación antes de ser encausado por primera vez por el delito de posesión para consumo (Art. 404 de la Ley de Sustancias Controladas, *supra*).** Eso produce que, al momento de querer otorgarse los beneficios del desvío que provee el Art. 404(b) y ante la exigencia más que

---

[19] Íd, pág. 5.

[20] A. M. López Beltrán, <u>Aplicación de un modelo sistemático para propiciar la autoeficacia y modificación de conducta de los participantes en el proceso de cortes de drogas</u>, 78 (Núm. 1) Rev. Jur. U.P.R. 5 (2009).

[21] R.R. MacNair y J.G. Corazzini, <u>Client Factors Influencing Group Therapy Dropout</u>, 31 (Núm. 2) American Psycological Association, 352-362 (1994); C. Swett y J. Noones, <u>Factors Associated With Premature Termination From Outpatient Treatment</u>, 40 American Psycological Association, 947-951 (1989).

razonable del juez de instancia de que – al menos el primer año– la persona se encuentre ingresado en un centro de rehabilitación, no se encuentre alguna institución dispuesto a aceptarlo.[22]

Todo lo anterior implica que, aunque el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, representa una gran ventaja para el probando que completa exitosamente su programa de rehabilitación, al menos una cuarta parte de los que obtienen tal desvío con toda probabilidad abandonarán el programa, teniendo que sufrir las consecuencias que el propio mecanismo advierte. Esto es, se dictará sentencia y podría cumplir cárcel por el delito comprendido en el Art. 404 y, además, de ser encontrado culpable por el delito de fuga, sin duda cumplirá cárcel **porque ese delito no cualifica para los beneficios de una sentencia suspendida.**[23] Entonces, si el probando cumple con el tratamiento, su récord penal no reflejará delito alguno; **pero si no cumple, su récord penal podría reflejar dos delitos graves en lugar de uno y, en ese caso, terminaría cumpliendo cárcel al menos por uno de ellos.**

---

[22] La mayoría de estas instituciones, llamados Centros o Hogares de Rehabilitación para la adicción tienen un enfoque obviamente terapéutico, y cuentan con normas que son necesarias para dar estructura al probando y orden a la institución. Hay personas adictas que terminan siendo expulsados en múltiples ocasiones de varias de estas instituciones, porque no se ajustan a esas normas. Esas instituciones, la mayoría de las veces, ya no están dispuestas a recibir nuevamente a esa persona.

[23] El Art. 281 del Código Penal, *supra*, establece que la pena por ese delito "se impondrá además de la sentencia por el otro delito o a la que esté cumpliendo. **En este delito no estarán disponibles las penas alternativas a la reclusión**". (Énfasis suplido).

Por otro lado y como señalamos, distinto al Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, el acogerse a los beneficios de la Ley de Sentencia Suspendida, *supra*, requiere que se dicte sentencia en contra de la persona, convicción que se reflejará en su récord penal. Además, y como señala el Art. 2A de la Ley[24], el probando deberá consentir a someterse a un programa regular para la detección de presencia de sustancias controladas, y recibir tratamiento y rehabilitación, de ser necesario.[25]

---

[24] Este artículo dispone lo siguiente:
**§ 1027a.   Sistema de libertad a prueba--Condiciones adicionales**

El tribunal sentenciador, en todo caso en que ordene que la persona sentenciada quede en libertad a prueba, impondrá y hará constar por escrito, como parte de las condiciones de la libertad a prueba, el compromiso del probando de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales mientras este disfrutando de los beneficios que le conceden las secs. 1026 a 1029 de este título.

Como condición a la libertad a prueba, la persona sentenciada habrá satisfecho la pena especial al Fondo de Victimas dispuesta en el Código Penal del Estado Libre Asociado de Puerto Rico, consentirá a someterse a un programa regular para la detección de presencia de sustancias controladas mediante pruebas confiables que permitan su orientación, tratamiento, y rehabilitación, a la toma de muestra para el análisis de ADN de ser requerido por la ley y, además, tener registrado su nombre, dirección y otros datos personales en el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores que se crea por ley en el Sistema de Información de Justicia Criminal o en el Registro de Personas Convictas por Corrupción, cuando haya sido convicto por alguno de los delitos allí enumerados.

La persona sentenciada consentirá, además, a que se le pueda revocar su libertad a prueba en ausencia si ésta ha abandonado la jurisdicción o si se desconoce su paradero por haber cambiado de dirección sin haberlo informado a su oficial probatorio.

Además, el probando, como condición a su libertad a prueba, consentirá a que, de ser acusado de cometer un delito grave, se celebre conjuntamente con la vista de determinación de causa probable la vista sumaria inicial que dispone la sec. 1029 de este título. La determinación de causa probable de la comisión de un nuevo delito es causa suficiente para, en ese momento, revocar provisionalmente los beneficios de la libertad a prueba.

[25] De hecho, las condiciones que en la práctica se imponen a una persona adicta a las drogas, en el sentido de permanecer recluido en un centro u

Sin embargo, y distinto al desvío que ofrece el Art. 404(b) de la Ley de Sustancias Controladas, *supra,* si la persona que se está beneficiando de una libertad a prueba bajo la Ley de Sentencia Suspendida, *supra*, incumple con las condiciones impuestas, tal incumplimiento podría conllevar la revocación de su libertad a prueba,[26] **pero no se le podría encausar por el delito de fuga, conforme resolvimos en *Pueblo v. Figueroa Garriga*, 140 D.P.R. 225(1996).** Así también lo advierte la Dra. Nevárez Muñiz al definir el término "custodia legal" del Art. 281 del nuevo Código Penal de 2004, *supra*, al señalar lo siguiente: "Distíngase que la custodia legal a que se refiere el tipo legal no incluye los convictos en sentencia suspendida o probatoria".[27] Por su parte, la Dra. Ortega Vélez, al enumerar las circunstancias bajo las cuales la evasión del sujeto activo constituiría fuga, no incluye al convicto que disfruta de una libertad a prueba bajo la Ley de Sentencia Suspendida.[28] En fin, esto,

---

hogar de rehabilitación, son prácticamente las mismas bajo la Ley de Sentencia Suspendida, *supra*, como bajo la Ley de Sustancias Controladas, *supra*.

[26] Una vez celebrado el procedimiento requerido por el Art. 4 de la propia Ley. 34 L.P.R.A. sec. 1029.

[27] D. Nevárez Muñiz, *Op. cit.,* pág. 359.

[28] Específicamente la Dra. Ortega Vélez señala que
[p]ara que una conducta sea punible como "fuga" se requiere que el sujeto activo se evada mientras se encuentra sometido legalmente (1) a detención preventiva, (2) a reclusión: cumpliendo sentencia firme o en trámite de apelación; (3) o a medida de seguridad de internación, o sometido a (4) tratamiento y rehabilitación en un programa del E.L.A., conforme a un procedimiento especial de desvío bajo la Regla 247.1 de Proc. Criminal, (5) a tratamiento y rehabilitación en un programa del E.L.A., conforme a un procedimiento especial de desvío bajo el inciso (b) del Art. 404 de la Ley de Sustancias Controladas, o (7) [sic] tratamiento de rehabilitación en un programa privado, supervisado y licenciado por una agencia del E.L.A., conforme a un procedimiento especial de desvío bajo el inciso (b) del Art. 404 de la Ley de

sin duda, constituye una notable ventaja de la libertad a prueba que provee la Ley de Sentencia Suspendida, *supra*, sobre el desvío que provee el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*.

III

***Discreción del Tribunal de Primera Instancia***

En el caso de autos, ambas disposiciones legales, tanto el Art. 404(b) de la Ley de Sustancias Controladas, *supra*, así como el Art. 2 de la Ley de Sentencia Suspendida, *supra*, establecen que **el tribunal podrá** suspender respectivamente "todo procedimiento" o "los efectos de la sentencia de reclusión", y conceder así la libertad a prueba.

Ya antes hemos señalado que la palabra "podrá" generalmente implica la intención del legislador de conceder discreción al sujeto a quien se dirige.[29] No tenemos duda que ese es el caso en esta ocasión. Nada en el texto, el contexto ni en los historiales legislativos de las leyes en cuestión nos mueve a pensar otra cosa. De manera que, en cuanto a las leyes que nos ocupan, **ambas disposiciones**, al compartir la expresión "el tribunal podrá", coinciden en

---

Sustancias Controladas. R. Ortega Vélez, <u>Código Penal de Puerto Rico</u>, Ediciones Chrisely, 1era. ed., 2007, pág. 256.

[29] *Blás v. Hosp. Guadalupe*; 146 D.P.R. 267, 319 (1998); *Srio. de Justicia v. Tribunal Superior*, 95 D.P.R. 158, 161 (1967); *Ex parte Detrés* 67 D.P.R. 381, 384 (1947); *Boneta ex parte*, 39 D.P.R. 154, 166 (1929).

conferir **discreción** al foro sentenciador para la otorgación de los correspondientes mecanismos.[30]

Al evaluar una determinación de un tribunal hecha en el ejercicio de la discreción concedida expresamente por un estatuto, debemos primeramente tener presente la norma reiterada de hermenéutica jurídica que establece la presunción de corrección que cobija a tal determinación. Tal presunción sólo puede ser obliterada por la presencia ya sea de prejuicio, parcialidad, error manifiesto o abuso de discreción.[31] En *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 210 (1990), precisamente en el marco de una denegatoria de una solicitud de sentencia suspendida, señalamos que la determinación de un tribunal en el ejercicio de esa discreción se presume "justa y correcta".[32]

En ese mismo caso definimos el término **discreción** señalando que "[d]iscreción, naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto 'no significa

---

[30] *Pueblo v. Zayas Rodríguez, supra,* 536; *Pueblo v. Ortiz Delgado*, 126 D.P.R. 579, 582-583 (Sentencia)(1990);*Pueblo v. Vega Vélez,* 125 D.P.R. 188, 201 (1990); *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407, 411-412 (1975).

[31] *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 316 (1991); *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 614-615 (1988); *Pueblo v. Torres Montañez*, 106 D.P.R. 125, 130-131 (1977).

[32] Véase, además, *Pueblo v. Pérez Bernard*, 99 D.P.R. 834, 839(1971); *Pueblo v. Feliciano*, 67 D.P.R. 247, 250 (1947).

poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho...'".[33]

También en *Pueblo v. Ortega, supra*, nos expresamos con relación a la dificultad que entraña precisar cuándo un tribunal de justicia incurre en abuso de esa discreción.[34] En ese contexto señalamos lo siguiente: "No tenemos duda, sin embargo, de que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad.  Como expresáramos en *Pueblo v. Sánchez González, supra*, pág. 200, '[d]iscreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera...'".[35] (Énfasis omitido.)

En cuanto al Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, ya hemos expresado que el tribunal goza, una vez otorga este desvío, de gran discreción para determinar la forma en que dicha rehabilitación ha de lograrse, así como de su duración.  También hemos pautado que esa discreción está sujeta al período máximo fijado por el estatuto.[36]

---

[33] *Pueblo v. Ortega Santiago, supra*, pág. 211. Véase, además, *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

[34] *Pueblo v. Ortega*, 125 D.P.R. 203, 211 (1990).

[35] Íd.

[36] *Pueblo v. Martínez Lugo*, 150 D.P.R. 238, 246 (2000); *Pueblo v. Román Santiago*, 109 D.P.R. 485, 488 (1980).

**IV**

## *El concurso de leyes y el principio de especialidad*

En lo pertinente, el Art. 12 del Código Penal de 2004, 33 L.P.R.A. sec. 4640, establece que "[c]uando un mismo hecho se regula por diversas disposiciones penales: (a) La disposición especial prevalece sobre la general".[37] Este inciso (a) procede del segundo párrafo del Art. 5 del pasado Código Penal,[38] y dispone para la aplicación de lo que se conoce como el principio de especialidad.[39]

El principio de especialidad busca resolver los conflictos del concurso de leyes.[40] Este principio constituye uno de varios criterios utilizados para resolver la existencia del aparente concurso o conflicto entre varias leyes o disposiciones legales.[41]

> Decimos que es un concurso *aparente,* porque el ordenamiento jurídico ofrece, de modo explícito o implícito, criterios para determinar la aplicabilidad de una u otra disposición penal en cada caso concreto. Este conflicto sería verdadero si el ordenamiento jurídico no brindase

---

[37] El Art. 12 del Código Penal de 2004 dispone lo siguiente:

**Artículo 12. Concurso de disposiciones penales.** Cuando un mismo hecho se regula por diversas disposiciones penales:
(a) La disposición especial prevalece sobre la general.
(b) La disposición de mayor alcance de protección al ambiente jurídico absorberá la de menor amplitud, se aplicará la primera.
(c) La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiariedad, o ésta se infiere.

[38] 33 L.P.R.A. 3005.

[39] D. Nevares Muñiz, <u>Nuevo Código Penal de Puerto Rico</u>, *op. cit.* pág. 13.

[40] *Íd.*

[41] Véase, L. Jiménez de Asúa, <u>Tratado de Derecho Penal</u>, 2da ed., Buenos Aires, Ed. Losada, 1958, T. II, pág. 540.

reglas para resolverlo; pero afortunadamente no es así.[42]

Por otro parte, "[s]egún el principio de especialidad, existe concurso de leyes cuando de los varios preceptos aparentemente concurrentes uno de ellos contempla más específicamente el hecho que los demás, [por lo que] tal concurso de leyes debe resolverse aplicando sólo la ley más especial (*lex specialis derogat legem generalem:* la ley especial deroga la general)".[43]

En síntesis, se ha sostenido que el principio de especialidad es

> en rigor, una regla de interpretación estatutaria que toma en cuenta la relación de jerarquía en que se hallan las distintas normas que concurren en su aplicación a un hecho delictivo. En estos casos se aplica la ley especial, según la máxima *lex specilais* [sic] *derogat legi generali*, pues se parte del supuesto de que la finalidad de una regulación especial es excluir o desplazar la general. Y es que así tiene que ser, pues quien realiza el tipo específico siempre consuma el genérico, mientras que a la inversa no sucede lo contrario.[44] (Citas y énfasis omitidos.)

El tratadista Jiménez de Asúa también nos señala que este conflicto aparente de disposiciones penales "no sólo se presenta en orden de tipos delictivos, sino en cuanto a los preceptos de la Parte general (una circunstancia agravante o

---

[42] L. Jiménez de Asúa, <u>La Ley y el Delito</u>, Editorial Sudamericana, Buenos Aires, 13era ed., 1984, pág. 141-142. (Énfasis en el original.)

[43] S. Mir Puig, <u>Derecho Penal: Parte General</u>, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 654.

[44] <u>Pueblo v. Ramos Rivas</u>, 171 D.P.R. 826, 836-837 (2007); Véase además, H. Jescheck y T. Weigend, <u>Tratado de Derecho Penal: Parte General</u> (M. Olmedo Cardenete, trad.), 5ta ed., Granada, Ed. Comares, 2002, pág. 790.

atenuante, por ejemplo)",[45] lo que claramente pautamos en *Pueblo v. Ramos Rivas*, 171 D.P.R. 826, 836 (2007).

Ahora bien, se ha señalado que el concurso de leyes ocurre "cuando a una misma acción le son aplicables dos o más disposiciones penales que *se excluyen* entre sí".[46] (Énfasis en el original.) Así, distinto al concurso ideal, en el cual varias disposiciones legales se aplican conjuntamente, en el concurso de leyes, "el hecho está igualmente comprendido en varias disposiciones legales, pero éstas, lejos de ser susceptibles de aplicación conjunta, son *incompatibles* entre sí".[47] (Énfasis en el original.)

Con relación al dilema que supone el seleccionar entre las leyes o disposiciones que participan de este concurso, Jiménez de Asúa nos plantea lo siguiente:

> **Ya sabemos que todo el ordenamiento jurídico, formado por distintas disposiciones, es uno y armónicamente dispuesto: algunas leyes son independientes entre sí, y otras se hallan coordinadas de modo que se integran o se excluyen recíprocamente.** A menudo es sencillo decidir cuál de las dos normas del ordenamiento jurídico, concurrente en el mismo tiempo y lugar, es la aplicable al caso concreto; **pero a veces se presentan dificultades y es preciso trazar reglas para saber cuándo una disposición consiente [permite] o excluye [descarta] la coetánea [concurrente] o sucesiva [consecutiva] aplicación de otra, respecto a la misma situación de hecho".**[48] (Énfasis suplido).

---

[45] L. Jiménez de Asúa, La Ley y el Delito*, op. cit.* pág. 141

[46] A. Arroyo de las Heras, Manual de Derecho Penal: El Delito, Pamplona, Ed. Aranzadi, 1985, pág. 812.

[47] Íd.

[48] L. Jiménez De Asúa, La Ley y el Delito, *op. cit.* pág. 141.

De manera que es clara la posibilidad de que dos disposiciones legales coincidan en la atención de unos mismos hechos, **pero que no necesariamente eso produzca un conflicto en su aplicación, sino que éstas puedan utilizarse a la misma vez, en la alternativa o subsiguientemente.**

Por consiguiente, **para que pueda ser de aplicación el principio de especialidad estatuido en el Art. 12 de nuestro Código Penal,** *supra,* **y como cuestión de umbral, es indispensable la existencia de un conflicto que hace incompatible la aplicación de dos o más disposiciones penales a la misma vez.** Una vez se está ante este concurso o conflicto de leyes o disposiciones, entonces se procede a utilizar uno de los tres principios expuestos en el referido artículo. En caso de que el conflicto sea producto de un choque entre una ley o disposición general y una ley o disposición especial, entonces el principio aplicable es el de especialidad.

V

*El principio de legalidad y su relación con el principio de especialidad*

El **principio de legalidad** se encuentra estatuido en nuestra jurisdicción mediante el Art. 2 de nuestro Código Penal de 2004, 33 L.P.R.A. sec. 4630.[49] Este principio prohíbe el que se inste una acción penal por un hecho que no

---

[49] El Art. 2 dispone expresamente que "[n]o se instará acción penal contra persona alguna por hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos".

esté expresamente definido como delito y que se impongan penas o medidas de seguridad que la ley no establezca con anterioridad a los hechos.[50] En el derecho norteamericano, el principio de legalidad se refiere a que la institución autorizada para formular los delitos es la Legislatura.[51] Este principio se extiende a la ejecución de las penas y medidas de seguridad, al reconocerse que las mismas no pueden dejarse al arbitrio de la autoridad administrativa penitenciaria, sino que se ejecutarán de la forma y circunstancias previstas por la ley.[52] No existe duda alguna con relación a que el principio de legalidad constituye un precepto cardinal en nuestro derecho penal y en todos los componentes del sistema de justicia criminal puertorriqueño.[53]

Por otro lado, y como ya señalamos, el principio de especialidad está estatuido en nuestro ordenamiento jurídico penal a través del Art. 12 (a) de nuestro Código Penal de 2004, *supra*. Ahora bien, con relación específicamente a esta regla de interpretación estatutaria que constituye el principio de especialidad, ha sido algo limitado el número

---

[50] *Pueblo v. Figueroa Pomales*, res. el 30 de octubre de 2007, 172 D.P.R. ___ (2007) 2007 T.S.P.R. 188.

[51] D. Nevares Muñiz, Derecho Penal Puertorriqueño: Parte General, 6ta.ed., San Juan, Instituto para el Desarrollo del Derecho, 2010, pág. 75.

[52] *Pueblo v. Bonilla Vázquez*, 148 D.P.R. 486 (1999).

[53] En *Pueblo v. Pizarro Solís*, 129 D.P.R. 911 (1992), confirmamos, basado en parte en este principio, una resolución del Tribunal de Primera Instancia que ordenaba a la Administración de Corrección que realizara los cómputos correspondientes a unas bonificaciones en favor de un convicto habitual que al momento de su reclamo llevaba cuatro años encarcelado cumpliendo su sentencia.

de ocasiones en  que nos hemos expresado.[54] De hecho, no fue hasta hace muy poco, en *Pueblo v. Ramos Rivas*, *supra*, resuelto en 2007, cuando formulamos pauta por primera vez con relación a este principio, en lo concerniente a las **penas**. En ese caso reconocimos la alta pertinencia que ostenta el principio de legalidad en los casos como el de autos, en los que un ciudadano reclama que la pena que se le pretende aplicar es ilegal y resulta más onerosa que aquella que resultaría si se aplica el principio de especialidad.

En *Pueblo v. Ramos Rivas*, *supra*, pautamos que una persona que ha sido convicta en distintas ocasiones por violaciones a la Ley de Sustancias Controladas, *supra*, debe ser sentenciada en grado de reincidencia según la disposición de reincidencia de dicha ley y no según las disposiciones de reincidencia del Código Penal. Al así hacerlo, aplicamos el principio de especialidad del Art. 5 del antiguo Código Penal, para resolver lo que constituía un claro conflicto.[55] En tal ocasión nos enfrentamos a dos disposiciones de ley, una especial –Art. 401 de la Ley de Sustancias Controladas– y otra general –Arts. 61 y 62 del

---

[54] Lo hicimos en *Pueblo v. López Pérez*, 106 D.P.R. 584 (1977), con relación a la aplicación del principio ante dos leyes especiales (Ley de Armas y Ley de Caza); en *Pueblo v. Mena Peraza,* 113 D.P.R. 275 (1982), con la aplicación del principio ante una ley general (Código Penal) *vis a vis* una ley especial (Ley de Instituciones Hipotecarias); en *Pueblo v. Pérez Casillas*, 117 D.P.R. 380 (1986), aplicación del principio ante dos leyes generales; en *Pueblo v. Calderón Álvarez,* 140 D.P.R. 627 (1996), dos disposiciones de una ley general (Código Penal); y en *Pueblo v. Ramos Rivas*, 171 D.P.R. 826 (2007).

[55] Como señalamos en la nota al calce Núm. 4 de *Pueblo v. Ramos Rivas*, *supra,* "[e]l Art. 12(a) del Código Penal de 2004 regula el principio de especialidad bajo términos muy similares al dispuesto en el Art. 5 del Código Penal de 1974".

Código Penal del 1974- que, distinto al caso de autos, no otorgaban discreción alguna al juez sentenciador para su aplicación, sino que **ambas** reclamaban su implementación ante unos mismos hechos.

A su vez, en *Pueblo v. Ramos Rivas*, *supra*, la implementación de **ambas** disposiciones producían un resultado conflictivo, pues la aplicación de la ley general -*a contrario sensus* de la ley especial- provocaba que la persona sentenciada sufriera una pena adicional, al no poder acogerse a las bonificaciones a las que tenía **derecho**, conforme lo dispuesto en *Pueblo v. Pizarro Solís*, 129 D.P.R. 911 (1992). Esto, según resolvimos en el propio caso de *Pizarro Solís, supra*, y reiteramos en *Pueblo v. Ramos Rivas*, *supra*, constituía una violación **al principio de legalidad**, pues producía un resultado más oneroso para la persona confinada.

Nótese, sin embargo, que tanto en *Pueblo v. Ramos Rivas*, *supra*, como en *Pueblo v. Pizarro Solís*, *supra,* los peticionarios ostentaban un **derecho** que le estaba siendo obliterado en violación al principio de legalidad. **No podemos decir lo mismo en el caso de autos, pues el peticionario no puede reclamar la violación de un derecho que no ostenta.**

Como hemos señalado, tanto la Ley de Sustancias Controladas, *supra*, como la Ley de Sentencia Suspendida, *supra*, conceden discreción al tribunal sentenciador en la otorgación de sus respectivos mecanismos de libertad a

prueba. Tal discreción denota claramente la intención del legislador de que, al momento de decidir si se concede o no el mecanismo, se adjudique **no un derecho, sino un privilegio**. Recientemente, en *Ford Motor v. E.L.A,* res. el 11 de agosto de 2008*,* 174 D.P.R. ___, 2008 T.S.P.R. 137, así lo reiteramos al señalar lo siguiente con relación al Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*:

> Cónsono con dicha normativa, la Ley de Sustancias Controladas permite a las personas que no han sido convictas anteriormente por delitos relacionados con sustancias controladas, y que son acusadas de posesión bajo el Artículo 404 de dicha ley, acogerse **al privilegio** de libertad a prueba. Del mismo modo que la Regla 247.1 de Procedimiento Criminal, *supra*, la libertad a prueba contemplada por el Artículo 404(b) de la Ley de Sustancias Controladas dispone que el tribunal no hará pronunciamiento de culpabilidad cuando el acusado se somete a un programa de desvío cuyo fin es la rehabilitación y el tratamiento de la persona con problemas de adicción a sustancias controladas. Si la persona cumple con las condiciones impuestas, el tribunal puede exonerarla y sobreseer el caso en su contra. (Énfasis suplidas y citas omitidas.)[56]

De esa misma forma nos hemos expresado en múltiples ocasiones con relación al mecanismo de libertad a prueba que provee la Ley de Sentencia Suspendida.[57] De manera que en cuanto a los dos mecanismos de libertad a prueba que nos ocupan en el caso de autos, el provisto por la Ley de Sentencia Suspendida, *supra*, y el Art. 404(b)(1) de la Ley

---

[56] Véanse, además, *Pueblo v. Texidor Seda,* 128 D.P.R. 578, 584 (1991)*; Martinez Reyes v. Tribunal Superior*, 104 D.P.R. 407, 411 (1975).

[57] *Pueblo v. Zayas Rodríguez, supra*; *Pueblo v. Molina Virola*, 141 D.P.R. 713 (1996); *Pueblo v. Texidor Seda*, *supra*; *Pueblo v. González Olivencia*, 116 D.P.R. 614 (1985); *Pueblo v. Laboy*, 110 D.P.R. 164 (1980); *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620 (1972); *Pueblo v. Martinez Rivera*, 99 D.P.R. 568 (1971).

de Sustancias Controladas, *supra*, no existe duda de que la concesión de ambos por el tribunal sentenciador constituye un **privilegio y no un derecho.**[58]

## VI

Ante la letra clara de ambas disposiciones en cuestión y la ausencia de alguna otra circunstancia que nos mueva a lo contrario, nos reiteramos en que la concesión del llamado desvío del Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*, así como de la libertad a prueba que concede el Art. 2 de la Ley de Sentencia Suspendida, *supra*, es un privilegio cuya otorgación descansa en la sana discreción del juez sentenciador.

De igual forma, nada encontramos en el texto de ambos estatutos, así como en sus historiales legislativos, que nos mueva a pensar que el legislador tuvo la intención de restringir las alternativas del juez, así como la del prospecto probando, a que éste únicamente pueda solicitar para recibir un desvío bajo el Art. 404(b)(1) de la Ley de Sustancias Controladas, *supra*. Del legislador haber tenido la intención de privar al tribunal sentenciador de la

---

[58] Con relación al mecanismo de sentencia suspendida, en múltiples ocasiones hemos utilizado el término "derecho limitado" para referirnos a ese privilegio. No obstante, siempre hemos tenido el cuidado de hacerlo única y exclusivamente en el contexto del debido proceso de ley que se requiere para revocar la libertad a prueba concedida a un probando. Véase *Álamo Romero v. Adm. Corrección,* res. el 15 de enero de 2009, 175 D.P.R. ___, 2009 T.S.P.R. 5; *Pueblo v. Molina Virola*, *supra*, pág. 719; *Torres Rosario v. Alcaide,* 133 D.P.R. 707, 722 (1993) (Opinión Disidente del Juez Asociado, señor Hernández Denton); *Pueblo v. Pérez Rivera,* 129 D.P.R. 306, 323 (1991)(Sentencia); *Pueblo v. Pacheco Torres*, 128 D.P.R. 586, 600 (1991)(Voto particular y de conformidad del Juez Asociado Alonso Alonso; *Maldonado Elías v. González Rivera*, 118 D.P.R. 260, 274 (1987) (Voto Particular del Juez Asociado, señor Hernández Denton); *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717, 722-723 (1985).

discreción de escoger cuál de ambas disposiciones le era más conveniente al probando, así lo hubiera expresado. Nuevamente, no encontramos indicio alguno de que esa fuera la intención legislativa.

En el caso de autos, el juez de instancia decidió no conceder el desvío que el peticionario estaba solicitando, sino la libertad a prueba del Art. 2 de la Ley de Sentencia Suspendida, *supra*. Al así hacerlo, tenemos que presumir que el Juez entendió que esa era la mejor opción para el prospecto probando y la que mejor servía a los fines de la justicia. Tal determinación goza de una presunción de ser una justa y correcta, por lo que sólo puede ser revocada ante prueba que nos convenza de que el tribunal abusó de su discreción. Ante tal juicio, el escrutinio debe ser uno que evalúe la razonabilidad de lo concedido, ante las circunstancias prevalecientes.

No existe prueba en el expediente de autos que nos mueva a revocar la determinación del juez sentenciador. Al contrario, su determinación nos parece una razonable a la luz del informe presentencia que éste tuvo ante sí. La Regla 162.1 de las de Procedimiento Criminal[59] establece que el Tribunal, antes de dictar sentencia por una convicción por delito grave -excepto aquellos de primer grado-, "deberá tener ante sí un informe que le haya sido rendido, después de haberse practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona

---

[59] 34 L.P.R.A. Ap. II, R. 162.1.

convicta... que le permita emitir una decisión racional de la sentencia". Como señala esta regla, son varios los factores que el Juez debe considerar antes de dictar sentencia, de manera que ésta responda al criterio de razonabilidad.

En el caso de autos, el juez de instancia antes de tomar su decisión tuvo ante sí el informe presentencia.[60] De dicho informe se desprende lo siguiente[61]:

a) Carlos Hernández Villanueva el 1 de febrero de 2007, en Carolina, Puerto Rico, poseía sustancias controladas conocidas como Marihuana y Cocaína.

b) **El Sr. Hernández Villanueva participó de manera activa en la venta de drogas. Éste lo hacía junto a sus amistades.**

c) **Admitió que él se encontraba vendiendo sustancias controladas y que la misma la guardaba en el monte donde los agentes la encontraron.**[62]

d) Según la Policía de Puerto Rico es primer ofensor, aunque surgen dos conflictos previos de fecha 10/03/06 por Art. 404 y 412 de la Ley de Sustancias Controladas, por los que no hubo causa en Vista Preliminar.

---

[60] El referido informe no fue controvertido por el peticionario, conforme lo permite la Regla 162.1 de Procedimiento Crfiminal, *supra*, que en su parte pertinente señala:

El tribunal dará acceso a los informes presentencia a los acusados o peticionarios, a sus abogados y al Ministerio Fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba.

Sólo se mantendrá como confidencial aquella información que hubiere sido prestada por la víctima o por personas particulares a quienes se les hubiere ofrecido dicha garantía.

[61] Véase Apéndice del Escrito de *certiorari*, págs. 66-67.

[62] Es menester señalar que contra el peticionario originalmente se encontró causa probable para arresto por dos delitos de posesión con intención de vender sustancias controladas (Art. 401). Sin embargo, en vista preliminar el Tribunal no encontró causa por esos delitos, sino por mera posesión (Art. 404). El Ministerio Público presentó solicitud de vista preliminar en alzada, pero nuevamente no hubo causa.

e) Carlos Hernández Villanueva fue un estudiante con problemas de aprendizaje. **Su padre lo llevaba a la escuela, pero él abandonaba la misma ya que no quería estudiar. Su abuela decidió darlo de baja de la escuela. Se auscultó por la TS si deseaba continuar estudios y Carlos Hernández Villanueva verbalizó que no le interesaba.**

f) Carlos se inició en uso de marihuana a los 12 años, a los 12 años [también] se inició en el uso de cerveza y a los 20 años se inició en el uso de cocaína vía nasal.

g) Fue evaluado en el área de sustancias controladas y de alcoholismo por el programa Alternativas Psicoeducativas de Puerto Rico. Se recomendó que se beneficiara de tratamiento en el área de sustancias controladas.

h) **Se le realizó una prueba de drogas en el proceso de evaluación y los resultados fueron <u>negativos</u>.** (Énfasis suplido y subrayado en el original).

De los datos del mencionado informe, podemos sin duda concluir que el aquí peticionario ha sido usuario de sustancias controladas. Sin embargo, no sabemos con certeza si al momento de su arresto se encontraba adicto a ellas; nótese que durante su evaluación dio negativo al uso de drogas. Lo que sí sabemos es que estaba vendiendo drogas. Por otro lado, el informe refleja que el aquí peticionario ya ha tenido la experiencia de abandonar una institución formativa y de estructura como es la escuela, y que no tiene interés en continuar sus estudios.

Contando con todos esos datos, el juez sentenciador entendió más justo y conveniente no otorgarle el desvío del Art. 404(b) de la Ley de Sustancias Controladas, *supra*, y sí una libertad a prueba, bajo el Art. 2 de la Ley de Sentencia Suspendida, *supra*. No vemos que tal determinación sea una

irrazonable, por lo que no debemos intervenir con tal discreción judicial.

## VII

Con relación a la alegación por parte del peticionario de que la determinación del tribunal de instancia es violatoria del Artículo 12 (A) del Código Penal y del debido proceso de ley constitucional, no le asiste la razón.

Como determinamos, en el presente caso no existe un conflicto en la aplicación de las dos disposiciones de ley que atienden el asunto en controversia, esto es, el mecanismo de libertad a prueba a utilizarse. Más bien, para una misma situación de hechos, el legislador ha concebido el que ambas disposiciones puedan utilizarse alternativamente.

**En ausencia de una determinación legislativa expresa de otra índole, no cabe hablar del principio de especialidad cuando no existe una obligación de implementar <u>ninguna</u> de las disposiciones que coinciden en su aplicación a una misma situación de hechos.** Por lo tanto, no existe violación al principio de especialidad, como tampoco al debido proceso de ley, pues el peticionario no ostenta un derecho a que se le conceda el desvío en controversia, sino que es un asunto que involucra la sana discreción del juez sentenciador.

Como hemos señalado, tal discreción no es absoluta, por lo que todo ciudadano tiene el derecho de cuestionar y los tribunales apelativos el deber de asegurar el correcto uso de ésta. Pero tal deber judicial para nada cambia la

naturaleza de un mecanismo, al cual consistentemente hemos definido como un privilegio. En ese sentido, el juez que evalúa la concesión del privilegio se encuentra compelido únicamente por su conciencia y por los parámetros jurisprudenciales que deben guiar el buen uso de su discreción.

## VIII

Por todo lo anterior, se confirma la sentencia del Tribunal de Apelaciones.


Erick V. Kolthoff Caraballo
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

El Pueblo de Puerto Rico

    Recurrido

        v.                         **CC–2008–566**

Carlos Hernández Villanueva

    Peticionario

**SENTENCIA**

San Juan, Puerto Rico, a 23 de septiembre de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Apelaciones.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita. El Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta se unen a la Opinión disidente.

                      Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                                   CC-2008-566

Carlos Hernández Villanueva

    Peticionario

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 23 de septiembre de 2010

Disiento. En esta ocasión nos corresponde determinar bajo cuál estatuto se le debe conceder una libertad a prueba a una persona que comete el delito de posesión ilegal de sustancias controladas: la Ley de Sentencia Suspendida y Libertad a Prueba, *infra*, o el artículo 404 de la Ley de Sustancias Controladas, *infra*. Por mandato del principio de especialidad, estimo que si está disponible el programa de desvío del artículo 404 y el tribunal entiende que la persona reúne los requisitos para disfrutar de una libertad a prueba, este privilegio se le tiene que conceder bajo dicha disposición.

Lamentablemente, este Tribunal hoy expone un análisis desacertado sobre el principio de especialidad y arriba a una conclusión, a nuestro juicio, errada en derecho.

Repasemos los hechos que suscitaron la presente controversia.

I.

El 31 de octubre de 2007, el señor Carlos Hernández Villanueva fue hallado culpable de dos cargos por violar el artículo 404 de la Ley de Sustancias Controladas que tipifica el delito de posesión ilegal. Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2404. El Tribunal de Primera Instancia refirió al peticionario a la Oficina de Oficiales Sociopenales para que ésta rindiera un informe presentencia y, luego, poder determinar si cualificaba para los beneficios de sentencia suspendida. Acto seguido, la defensa del peticionario le solicitó al tribunal que se le concedieran los beneficios del programa de desvío dispuestos en el inciso (b) del referido artículo 404, 24 L.P.R.A. sec. 2404(b)(1), a lo cual el Ministerio Fiscal respondió que ello dependería del resultado del informe presentencia. El foro primario tomó conocimiento de lo expresado.

Del informe preparado por la técnica sociopenal se desprende que el peticionario comenzó a utilizar marihuana cuando apenas tenía doce años de edad, y ocho años después comenzó el uso esporádico de cocaína. También tuvo problemas de aprendizaje y luego su abuela lo dio de baja del sistema escolar. La Policía de

Puerto Rico informó que se trataba de la primera ofensa del peticionario por posesión de sustancias controladas. Específicamente, el peticionario tenía consigo marihuana y cocaína. Por otro lado, aunque los resultados de las pruebas de drogas que se le efectuaron al peticionario durante su evaluación fueron negativos, el programa Alternativas Psicoeducativas de Puerto Rico recomendó que se le brindara tratamiento sobre sustancias controladas. A tenor de estos hallazgos, el informe recomendó brindar al acusado los beneficios de una libertad a prueba.[63]

Una vez el Tribunal de Primera Instancia evaluó el informe presentencia antes descrito, dictó sentencia condenando al peticionario a tres años de reclusión por cada uno de los dos cargos imputados, a ser cumplidos de manera concurrente. Sin embargo, tomando en cuenta que el informe presentencia era favorable para el peticionario, el tribunal le concedió los beneficios de una sentencia suspendida bajo la Ley de Sentencia Suspendida y Libertad a Prueba (Ley de Sentencia

---

[63] El informe presentencia también señaló que, alegadamente, el peticionario había admitido estar vendiendo las sustancias controladas que los agentes ocuparon. A raíz de dicho señalamiento, la Opinión mayoritaria concluye que aunque no sabemos con certeza si el peticionario era drogodependiente al momento de su arresto, "[l]o que sí sabemos es que estaba vendiendo drogas". La Opinión del Tribunal adopta la referida conclusión a pesar de reconocer que en la vista preliminar, y vista preliminar en alzada, no se encontró causa probable contra el peticionario para acusarlo por venta de drogas. Art. 401, 24 L.P.R.A. sec. 2401. Al afirmar que "sí sabemos" que el peticionario se encontraba vendiendo sustancias controladas, la Opinión mayoritaria se aparta de una sabia norma establecida por este Foro, a saber, que los informes presentencia no constituyen prueba contra los acusados. *Pueblo v. González Olivencia*, 116 D.P.R. 614 (1985).

Suspendida), Ley Núm. 259 de 3 de abril de 1946, 34 L.P.R.A. sec. 1026 *et seq.*, sujeto a que el convicto completara tratamiento para su adicción.

Inconforme con el dictamen, el peticionario recurrió al Tribunal de Apelaciones alegando que al negársele los beneficios del programa de desvío disponibles bajo el artículo 404 de la Ley de Sustancias Controladas, se violó el principio de especialidad y el debido proceso de ley. El tribunal apelativo intermedio ordenó al foro primario que emitiera una resolución en la que expresara los fundamentos que utilizó para denegar el remedio solicitado por el peticionario. Cumpliendo con dicha orden el Tribunal de Primera Instancia señaló en su resolución explicativa, entre otras cosas, que la defensa solicitó los beneficios del artículo 404 solamente en el momento en que el tribunal hizo el referido para obtener el informe presentencia del acusado. Asimismo expresó que cuando el foro llevó a cabo la alocución, la defensa manifestó que no había impedimento legal para dictar sentencia y el acusado mantuvo silencio. Finalmente, resumió los hallazgos del informe presentencia y explicó que le brindó al acusado una probatoria regular ya que el informe presentencia recomendó concederle libertad a prueba.

Contando con los argumentos de las partes y la explicación del foro primario, el Tribunal de Apelaciones denegó expedir el recurso de *certiorari*. La mayoría del panel basó su determinación en la discreción de la que gozan los jueces de instancia en la

determinación de conceder los beneficios de una sentencia suspendida. *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983). No obstante, la resolución del Tribunal de Apelaciones no atendió el reclamo del peticionario bajo el principio de especialidad.

De dicha determinación el peticionario acudió ante este Tribunal mediante recurso de *certiorari*, sosteniendo una vez más que el dictamen del Tribunal de Primera Instancia viola el principio de especialidad y el debido proceso de ley. En esencia, el peticionario arguye que una vez se es juzgado bajo el artículo 404 de la Ley de Sustancias Controladas, y el tribunal considera apropiado otorgarle los beneficios de una libertad a prueba, éste tiene que conceder la probatoria bajo los preceptos del mismo artículo 404. Ello, pues se trata de una legislación especial en la que el legislador estableció una política pública particular para lidiar con la problemática de la drogadicción, en contraposición a la Ley de Sentencia Suspendida, que es una legislación general. El 14 de noviembre de 2008, expedimos el auto solicitado por el peticionario.

En su comparecencia ante nosotros la Procuradora General sostiene que tanto la Ley de Sentencia Suspendida, como el programa de desvío contenido en la Ley de Sustancias Controladas, son leyes especiales que operan de forma paralela y no subsidiaria toda vez que ambas ofrecen penas alternativas a la reclusión. Por lo tanto, teniendo en cuenta que los beneficios de libertad a prueba son privilegios y no derechos, la Procuradora

concluye que queda entonces en la sana discreción del juzgador seleccionar una de las legislaciones especiales para otorgar sus beneficios al acusado.

Antes de juzgar las alegaciones de las partes, examinemos las normas aplicables.

## II.

## A.

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública el: "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. E.L.A., 1 L.P.R.A.[64] Un componente importante en la promulgación de esa política pública rehabilitadora, es la libertad a prueba: una pena alternativa a la reclusión que, aunque disponible desde hace varias décadas, recientemente fue incorporada al Código Penal.[65]

---

[64] La profesora Nevares Muñiz comenta que esta disposición "no se refiere propiamente a adoptar la rehabilitación como finalidad para la imposición de la pena, sino que la misma constituye un objetivo del sistema correccional. El objetivo rehabilitador entra en operación una vez comienza la ejecución de la pena, pero no sería necesariamente el fundamento único para imposición de la misma. A esos fines, la Ley del Mandato Constitucional de Rehabilitación, Ley Núm. 377 de 16 de septiembre 2004, viabiliza el acceso de todo convicto a programas de rehabilitación". D. Nevares Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Instituto para el Desarrollo del Derecho, Inc., San Juan, 5ta ed., 2005, págs. 382-83. No obstante, el artículo 47 del Código Penal establece que uno de los propósitos de la imposición de la pena es la rehabilitación. 33 L.P.R.A. sec. 4675.

[65] En lo pertinente, el artículo 68 del Código Penal dispone: "En los delitos grave de tercer y de cuarto grado, sus tentativas, y en las tentativas de delitos graves de segundo grado, el tribunal puede imponer una o cualquier combinación de las siguientes penas como alternativa a la pena de reclusión: restricción

*Pueblo v. Vega Vélez*, 125 D.P.R. 188, 200 (1990). Esta pena alternativa puede concederse mediante los mecanismos de sentencias suspendidas o programas de desvío. Ambos ayudan a evitar los efectos negativos de la reclusión en el individuo, mientras también reducen el impacto sobre sus dependientes y familiares. *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530, 536 (1999). La promoción del interés social en la prevención y corrección del crimen, la disminución de los costos sociales y económicos de la reclusión, y la posibilidad de que el convicto se transforme en un ciudadano de provecho, son algunos de los atributos y propósitos de la libertad a prueba. *Id.* Conscientes de todo ello, veamos las características principales de los mecanismos en controversia.

La Ley de Sentencia Suspendida, *supra*, estableció en nuestro sistema penal una vía para que los convictos puedan cumplir sus sentencias, o parte de éstas, fuera de las instituciones carcelarias. Este estatuto, ahora por disposición del Código Penal, regula la pena alternativa de libertad a prueba.[66] Bajo esta ley los acusados son sentenciados por sus actos ilícitos, pero los efectos de la sentencia se suspenden y queda entonces en libertad mientras está sujeto a un régimen

---

terapéutica, restricción domiciliaria, **libertad a prueba** o servicios comunitarios". 33 L.P.R.A. sec. 4696 (Énfasis suplido).

[66] El artículo 53 del Código Penal lee: "La libertad a prueba consiste en la suspensión de los efectos de la sentencia de reclusión para que el convicto se someta al régimen de supervisión que se dispone en la **Ley de Sentencias Suspendidas**, según enmendada". 33 L.P.R.A. sec. 4681 (Énfasis suplido).

de supervisión.   34 L.P.R.A. sec. 1027; *véase también* Art. 53 del  Código Penal, 33 L.P.R.A. sec. 4681.  Ahora bien, dicho beneficio se considera un privilegio y no un derecho, y está sujeto a que el individuo cumpla con las condiciones que le imponga el tribunal.  *Pueblo v. Molina Virola*, 141 D.P.R. 713 (1996); *Pueblo v. Zayas Rodríguez*, *supra*.  Si la persona reúne los criterios que establece esta legislación para la concesión de la libertad a prueba, entonces, ejerciendo su discreción y utilizando toda la información disponible sobre el sujeto, el juzgador determina si éste debe disfrutar del beneficio.  *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 210 (1990); *Pueblo v. Rodríguez Velázquez*, 152 D.P.R. 192, 202 (2000).

Es importante señalar que aunque la libertad a prueba bajo el Código Penal está disponible para delitos graves de tercer y cuarto grado, sus tentativas y tentativas de delitos graves de segundo grado, Art. 68, 33 L.P.R.A. sec. 4696, la Ley de Sentencia Suspendida, *supra*, excluye de sus beneficios ciertos delitos como el secuestro, robo, soborno y venta de armas, entre otros.[67]

---

[67] El artículo 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027, no permite que se suspendan los efectos de una sentencia cuando se trate de:
   ". . . .
   (2) Uno de los siguientes delitos graves con pena en la clasificación de tercer grado: actos lascivos cuando la víctima sea menor de catorce (14) años, secuestro, escalamiento, robo, estrago, homicidio negligente, soborno, oferta de soborno, apropiación ilegal de propiedad o fondos públicos, enriquecimiento injustificado, y malversación de fondos públicos.
   (3)Uno de los siguientes delitos graves de la Ley de Armas de Puerto Rico, con pena de

Por lo tanto, la libertad a prueba regulada por este estatuto puede ser concedida a las personas que cometan cualquier delito grave de tercer y cuarto grado, sus tentativas y tentativas de delitos graves de segundo grado, siempre y cuando no se trate de los delitos que han sido expresamente excluidos por el texto de la Ley de Sentencia Suspendida, *supra*, u otra legislación. Por

delito grave de tercer grado, infracción a las secs. 458 (Fabricación, Venta y Distribución de Armas), 458a (Prohibición a la Venta de Armas a Personas sin Licencia), 458g (Posesión o Venta de Armas con Silenciador), 458h (Facilitar Armas a Terceros), y 458 (Arma con número de serie mutilado), todas del Título 25.

(4) Delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o sustancias para fabricar explosivos o detonadores, artefactos o mecanismos prohibidos por la Ley de Explosivos de Puerto Rico, según enmendada, secs. 561 et seq. del Título 25.

(5) Un delito grave para cuya comisión la persona utilizó o intentó utilizar un arma de fuego.

(6) Uno de los siguientes delitos graves de la Ley de Sustancias Controladas: las secs. 2401 (Actos prohibidos); 2405 (Distribución a personas menores de dieciocho (18) años); 2411 (Empleo de menores); 2411a (Introducción de drogas en escuelas o instituciones), todas del Título 24.

(7) Una tentativa o cooperación en cualquiera de los delitos excluidos en los incisos (1) a (7), anteriores.

. . . . .

El tribunal sentenciador no podrá suspender los efectos de una sentencia dictada contra toda persona, un funcionario o empleado público por violación a los Artículos 209 a 213 del Código Penal, ni por los delitos de apropiación ilegal agravada de bienes o fondos públicos, inciso (a) del Artículo 166 del Código Penal, o conspiración, Artículo 262 del propio Código, ni por los delitos contra fondos públicos, Artículo 216 de dicho Código, en relación con violación a cualesquiera de los antes mencionados en este párrafo, según tipificados en los Artículos 1 et seq. del Código Penal.

. . . . .".

ejemplo, la Ley de Sustancias Controladas aclara que las disposiciones sobre sentencia suspendida aplican también a los delitos que se tipifican en la propia Ley de Sustancias Controladas, con excepción de los delitos de: fabricación o distribución de sustancias controladas; su distribución a menores; empleo de menores; e introducción de drogas a escuelas o instituciones. 24 L.P.R.A. sec. 2414. De manera que aunque algunos delitos graves quedan fuera del alcance de esta legislación, su extensión sigue siendo sumamente amplia. Por ello se ha dicho que éste "es el estatuto general que provee el mecanismo alterno para que un convicto cumpla su sentencia fuera de prisión". *Pueblo v. Texidor Seda*, 128 D.P.R. 578, 582 (1991); *Pueblo v. Rodríguez Velázquez*, *supra*, pág. 200.

Otro estatuto que brinda el beneficio de libertad a prueba en nuestro ordenamiento es precisamente la Ley de Sustancias Controladas, *supra*. Ésta se ha reconocido como una legislación especial[68] que regula de forma abarcadora tanto la fabricación y distribución de ciertas drogas o sustancias, como también conducta

---

[68] "La ley especial es aquélla que se refiere a determinada categoría de personas, bienes, cosas, relaciones jurídicas, o delitos. La misma opera sobre un objeto o sujeto determinado y tiene un propósito particular. Incluye tipificación de delitos y reglamentación procesal adecuada a su implantación. Su relación con la ley general es una de especie a género. No está en contraposición a las leyes generales, sino que es un complemento o especificación de éstas. De ahí que, aunque como regla general, la ley especial prevalece sobre la general, ésta suplirá las deficiencias de aquella". D. Nevares Muñiz, *op. cit.*, pág. 140.

constitutiva de delito y su correspondiente pena. *Pueblo v. Ramos Rivas*, 171 D.P.R. 826, 833 (2007). "La misma refleja el criterio del legislador sobre cuál debe ser la política pública prevaleciente para enfrentar el problema de la drogadicción y tráfico ilegal de drogas en Puerto Rico". *Id*.

En lo relativo a la controversia que hoy atendemos, el artículo 404 de la Ley de Sustancias Controladas establece un sistema de libertad a prueba mejor conocido como programa de desvío.[69] 24 L.P.R.A. sec. 2404(b)(1). Mediante éste, luego de la celebración del juicio o de una alegación de culpabilidad por posesión ilegal de sustancias controladas, el tribunal puede concederle al acusado los beneficios de una probatoria y someterlo a un programa de tratamiento y rehabilitación para su adicción. *Id*. Sin embargo, la concesión del beneficio tampoco es automática, pues descansa en la sana discreción del juzgador el determinar si es seguro para la sociedad y para el propio acusado mantenerse en la libre comunidad. *Pueblo v. Martínez Lugo*, 150 D.P.R. 238, 246 (2000). Para poder disfrutar de este privilegio, es necesario que el individuo se comprometa

---

[69] Cabe señalar que tanto la Regla 247.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el artículo 3.6 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 636, como el artículo 21 de la Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, 34 L.P.R.A. sec. 2221, también proveen programas de desvío similares –pero no idénticos– al del artículo 404 de la Ley de Sustancias Controladas. *Véanse*, *Pueblo v. Torres Serrano*, res. el 2 de febrero de 2009, 2009 T.S.P.R. 20, 175 D.P.R. __ (2009); *Pueblo v. Rodríguez Velázquez*, 152 D.P.R. 192 (2000); *Díaz Morales v. Departamento de Justicia*, res. el 27 de octubre de 2008, 2008 T.S.P.R. 175, 175 D.P.R. __ (2008).

a cumplir, y en efecto cumpla, las condiciones que le sean impuestas por el foro primario. *Id.*, pág. 247. *Véase además*, *Pueblo v. Acevedo Ramos*, res. el 27 de febrero de 2008, 2008 T.S.P.R. 35, pág. 9, 173 D.P.R. \_\_ (2008).

Ahora bien, aunque dicho programa de desvío es análogo a la libertad a prueba establecida en "el estatuto general de Sentencias Suspendidas, *tiene sustanciales diferencias*". *Pueblo v. Martínez Lugo*, *supra*, pág. 246 (Énfasis en el original) (Citas omitidas). *Véanse también*, *Pueblo v. Texidor Seda*, *supra*; *Pueblo v. Rodríguez Velázquez*, *supra*. En primer lugar, el programa de desvío del artículo 404 solamente está disponible para las personas que han sido halladas culpables de posesión ilegal bajo el inciso (a) del artículo 404 de la Ley de Sustancias Controladas,[70] siempre y cuando no hayan sido convictas anteriormente por violar leyes relacionadas a drogas, y que sea la primera vez que disfrutan de dicho privilegio. 24 L.P.R.A. sec. 2404(b)(1); *Pueblo v. Torres Serrano*, res. el 2 de febrero de 2009, 2009 T.S.P.R. 20, pág. 9, 175 D.P.R. \_\_ (2009).

Por otro lado, bajo el referido artículo, el tribunal no hace pronunciamiento de culpabilidad ni dicta sentencia. De modo que los procedimientos ante el

---

[70] El delito de posesión establecido en el estatuto expone que "[s]erá ilegal el que cualquier persona, a sabiendas o intencionalmente, posea alguna sustancia controlada, a menos que tal sustancia haya sido obtenida directamente o de conformidad con la receta u orden de un profesional actuando dentro del marco de su práctica profesional, o excepto como se autorice en este capítulo". 24 L.P.R.A. sec. 2404(a).

tribunal quedan suspendidos antes de que se dicte un fallo y la persona es sometida a un programa de tratamiento y rehabilitación bajo las condiciones que el foro primario estime necesarias. *Id.* Si alguna de las condiciones impuestas por el tribunal fuera infringida por el probando, se revocaría su beneficio y se dictaría la sentencia correspondiente. *Id.* *Véanse*, *Pueblo v. Martínez Lugo*, *supra*, pág. 247; *Pueblo v. Acevedo Ramos*, *supra*.

Asimismo el artículo 404 dispone que luego de transcurrir el período probatorio, el cual no podrá exceder cinco años en ningún caso, *Pueblo v. Román Santiago*, 109 D.P.R. 485 (1980), sin que la persona deje de cumplir con los términos impuestos por el juzgador, éste puede exonerar al individuo y sobreseer el caso en su contra. 24 L.P.R.A. sec. 2404(b)(1). Dicha determinación descansa en la discreción del foro primario y la misma debe tomarse luego de la celebración de una vista en la que el juzgador evalúe si el individuo ha sido debidamente rehabilitado. *Id.* De igual forma, esta decisión se realiza sin llevar a cabo una declaración de culpabilidad. Incluso, el artículo 404 dispone que la persona así sobreseída y exonerada, no se considerará convicta para efectos de las incapacidades o descalificaciones que imponen las leyes a los convictos cuando cometen algún delito, como por ejemplo, la reincidencia. *Id.* *Véase también*, *Ford Motor Credit v. E.L.A.*, res. el 11 de agosto de 2008, 2008 T.S.P.R. 137, págs. 9-10, 174 D.P.R. __ (2008).

Posteriormente, el tribunal conserva el expediente del caso con carácter confidencial, exclusivamente, para determinar en casos futuros si la persona puede beneficiarse del programa estatuido en el artículo discutido. 24 L.P.R.A. sec. 2404(b)(1). Además, el artículo 404 le brinda al individuo el derecho de requerir a la Policía de Puerto Rico que le devuelva cualesquiera expedientes de huellas digitales o fotos que hayan sido obtenidas en relación con la violación del referido artículo y estén bajo el poder de la Policía. *Id.*

Vemos entonces que ambos estatutos establecen medios para imponer la pena alternativa de libertad a prueba: la sentencia suspendida y el programa de desvío. Sin embargo, los beneficios descritos del programa de desvío de la Ley de Sustancias Controladas, *supra*, no están disponibles bajo la Ley de Sentencia Suspendida, *supra*. Mediante esta última las personas son sentenciadas a prisión por lo que se consideran convictas, aunque la ejecución de la sentencia queda suspendida.[71] Mientras en el programa de desvío el

---

[71] El intempestivo examen que ofrece la Opinión mayoritaria sobre el delito de fuga parece obviar cuáles son los límites de la controversia que hoy atendemos. Por otro lado, adviértase que cuando este Tribunal concluyó que no se podía configurar el delito de fuga si el imputado estaba disfrutando de una sentencia suspendida, *Pueblo v. Figueroa Garriga*, 140 D.P.R. 225 (1996), estábamos pasando juicio sobre el artículo 232 del Código Penal de 1974, 33 L.P.R.A. sec. 4428, antes de ser enmendado por la Ley Núm. 7 de 12 de enero de 1995. Sin embargo, bajo el nuevo Código Penal de 2004 el delito de fuga fue reformulado nuevamente, 33 L.P.R.A. sec. 4909, por lo que hoy contiene un lenguaje distinto al que este Tribunal analizó anteriormente. Ante dicho trasfondo, y la interrogante sobre si

probando no cumple sentencia ya que no se produce un dictamen de la misma, e incluso es posible que al final su historial criminal no se vea afectado. *Pueblo v. Román Santiago*, *supra*, pág. 490.

Como vimos anteriormente, el peticionario arguye que el foro primario erró al no seguir el principio de especialidad, aplicando en este caso una ley general en lugar de otra de carácter especial. Su reclamo requiere que repasemos la figura del concurso aparente de leyes.

B.

El concurso aparente de leyes, o conflicto aparente de disposiciones penales, se presenta cuando hay más de un precepto penal que concurren en su aplicación a un hecho delictivo y hay que determinar cuál es la disposición penal que debe regir la situación. *Pueblo v. Ramos Rivas*, *supra*, pág. 836, *citando a* D. Nevares Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Instituto para el Desarrollo del Derecho, Inc., San Juan, $5^{ta}$ ed., 2005, pág. 136. Dicho concurso se da tanto en referencia a los tipos de delitos como a otros asuntos, entre ellos las penas. *Pueblo v. Ramos Rivas, supra*, pág. 836. *Véase también* L. Jiménez de Asúa, *La ley y el delito*, Ed. Sudamericana, Buenos Aires, $13^{ra}$ ed., 1984, pág. 141 ("[el concurso aparente de leyes] no sólo se presenta en orden de tipos delictivos, sino en cuanto a los preceptos de la Parte general"). El adjetivo con el que se describe esta figura, a saber,

---

actualmente es posible cometer el delito de fuga mientras se cumple la pena alternativa de libertad a prueba mediante sentencia suspendida, *quaere*.

"aparente", obedece a que la solución del supuesto conflicto entre las disposiciones queda resuelto haciendo uso de varios métodos de interpretación, siguiendo la relación jerárquica de las normas en concurso. Nevares Muñiz, *op. cit.*, pág. 136.

En torno a esta doctrina la Opinión del Tribunal señala que el concurso aparente de leyes sólo se presenta cuando existen dos o más disposiciones penales que "se excluyen" o "son incompatibles" entre sí. Es decir, la Opinión mayoritaria toma como requisito de umbral para aplicar las reglas del concurso aparente de leyes, que dos disposiciones legales sean excluyentes entre sí. Esta postura es de todo punto desatinada y se aparta de lo que la doctrina ha determinado sobre la figura del concurso aparente de leyes. Si se tratara de dos disposiciones que son, de entrada, excluyentes o incompatibles la una con la otra, por definición, no cabría hablar de concurso aparente de leyes porque no habría controversia sobre cuál de las dos aplica a una situación en particular.

Llanamente, y conforme al propio nombre de la figura, el llamado concurso aparente de leyes supone un conflicto entre dos disposiciones que *aparentan ser* igualmente aplicables a un mismo hecho *precisamente porque inicialmente ninguna excluye la otra*. El tratadista Francisco Muñoz Conde lo explica con sencillez:

> El concurso de leyes nada tiene que ver, por tanto, con un auténtico concurso, sino con un problema de determinación de la ley o precepto legal aplicable, cuando aparentemente son

varios los que vienen en consideración. Un parricidio es también un homicidio y si no estuviera especialmente tipificado en el Código Penal, podría perfectamente ser castigado como un delito de homicidio, ya que de todos modos igual que este delito también el parricidio es la muerte de una persona. Pero desde el momento que en el Código Penal vigente hay dos preceptos que pueden ser aplicables a un mismo hecho y la aplicación de uno de ellos excluye la del otro, hay que saber qué criterios utilizar para resolver este *aparente concurso de leyes*.

F. Muñoz Conde, *Teoría General del Delito*, Ed. Temis, Bogotá, 2$^{da}$ ed., 1999, pág. 178.

Por otro lado, el eminente tratadista penal Jiménez de Asúa expresa, respecto a la posición esbozada en la Opinión mayoritaria lo siguiente: "no se concibe cómo en ese supuesto puede hablarse de concurso de leyes: si [las disposiciones penales] están en contradicción, significa que las dos leyes no pueden aplicarse a un mismo hecho". Jiménez de Asúa, *op. cit.*, págs. 144-45. Cuando la Opinión del Tribunal habla de incompatibilidad de las disposiciones invocadas, no advierte que ello ocurre **luego de que se ha concluido que hay un concurso aparente de leyes, se han aplicado los criterios que provee el propio Código Penal para dirimir este tipo de asunto, y se llega a la conclusión que es una de ellas la que aplica excluyendo la aplicación de la otra.**

Nos referimos nuevamente a Jiménez de Asúa cuando, al distinguir el concurso aparente de leyes del concurso de delitos, indica: "[c]ierto que la diferencia consiste en que, mientras en el concurso aparente de leyes se excluyen entre sí las diversas disposiciones, en el concurso formal de delitos no ocurre de ese modo; **pero**

**esto es más bien la consecuencia que el requisito diferencial**, y por eso es preciso investigar el *porqué* las disposiciones se excluyen en un caso y en otro no". *Id.*, pág. 145 (Primer énfasis suplido). *Véase también* E. Bacigalupo, *Derecho Penal: Parte General*, Ed. Hammurabi, Buenos Aires, 2[da] ed., 1999, págs. 570-71 ("Esta situación se da cuando entre los tipos penales que serían aplicables al caso concreto exista una relación de especialidad, de subsidiariedad o de consunción. . . . La consecuencia práctica del concurso de leyes reside en que sólo es aplicable la pena del delito que desplaza a los otros . . .".).

Conforme a esta doctrina, el artículo 12 de nuestro Código Penal, 33 L.P.R.A. sec. 4640, ordena cómo interpretar las disposiciones penales cuando nos enfrentamos al concurso aparente de leyes:

> Cuando un mismo hecho se regula por diversas disposiciones penales:
>
> (a) **La disposición especial prevalece sobre la general**.
> b) La disposición de mayor alcance de protección al bien jurídico absorberá la de menor amplitud, y se aplicará la primera.
> (c) La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiariedad, o ésta se infiere. (Énfasis suplido).
> El principio de especialidad, recogido en el inciso

(a) del artículo antes citado, se emplea cuando una situación es regulada tanto por una disposición de carácter general como por otra de carácter especial. En estos casos se utilizará la disposición especial, quedando entonces desplazada la general, excepto que alguna legislación ordene otro proceder. *Pueblo v.*

*Pérez Casillas*, 117 D.P.R. 380 (1986). A tenor de lo anterior comenta el tratadista Santiago Mir Puig que "[s]egún el **principio de especialidad**, existe concurso de leyes cuando de los varios preceptos aparentemente concurrentes uno de ellos contempla más específicamente el hecho que los demás, y tal concurso de leyes debe resolverse aplicando sólo la ley más especial (*lex specialis derogat legem generalem*: la ley especial deroga la general)". S. Mir Puig, *Derecho Penal: Parte General*, Ed. B de F, Buenos Aires, 7$^{ma}$ ed., 2$^{da}$ reimpresión, 2005, pág. 648 (Énfasis en el original) (Citas omitidas).

Por el contrario, si la ley especial en realidad no es de aplicación a los hechos en controversia, no estaríamos ante un concurso aparente de leyes y la ley general regiría el asunto. Esta relación de especialidad puede surgir entre disposiciones de una misma ley, así como entre disposiciones de una ley general y una ley especial, o incluso, entre disposiciones de dos leyes especiales pero con un vínculo de especie a género.[72] *Véase* D. Nevares Muñiz,

---

[72] En el pasado este Tribunal ha tenido la oportunidad de examinar la aplicación del principio de especialidad en varias vertientes: *Pueblo v. López Pérez,* 106 D.P.R. 584 (1977) (dos leyes especiales: la Ley de Caza *vis a vis* la Ley de Armas); *Pueblo v. Mena Peraza,* 113 D.P.R. 275 (1982) (una ley general y una ley especial: apropiación ilegal agravada del Código Penal de 1974 *vis a vis* retención indebida de dinero de la Ley de Instituciones Hipotecarias); *Pueblo v. Pérez Casillas,* 117 D.P.R. 380 (1986) (dos leyes generales: mecanismo legislativo para iniciar acciones criminales por perjurio del Código Político *vis a vis* delito de perjurio del Código Penal de 1974); *Pueblo v. Calderón Álvarez,* 140 D.P.R. 627 (1996) (dos disposiciones de una sola ley: apropiación ilegal de bienes públicos del Código Penal de 1974 *vis a*

*Nuevo Código Penal de Puerto Rico*, Instituto para el Desarrollo del Derecho, Inc., Hato Rey, 2004-05, págs. 13-14.

Utilizando las normas ya expuestas, examinemos la controversia presentada ante nosotros.

III.

Como expresáramos antes, el peticionario sostiene que una vez el Tribunal de Primera Instancia determinó su culpabilidad por violar el artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404, así como concederle el privilegio de una libertad a prueba, el foro primario debió entonces hacer uso del programa de desvío establecido en el artículo infringido en lugar de sentenciarlo a tres años de prisión, con el beneficio de una probatoria bajo la Ley de Sentencia Suspendida, *supra*. Ello ya que el programa de desvío del artículo 404 tiene una relación de especialidad frente al sistema de libertad a prueba de la Ley de Sentencia Suspendida, *supra*. El razonamiento del peticionario es correcto.

La posesión ilegal se penaliza en la Ley de Sustancias Controladas con una pena de reclusión de tres años, 24 L.P.R.A. sec. 2404(a), por lo que se trata de un delito grave de cuarto grado. Art. 16(d) del Código Penal, 33 L.P.R.A. sec. 4644. Dicha clasificación parecería permitir que el juzgador haga uso de las penas alternativas contenidas en el artículo 68 del Código

_____

*vis* interferencia fraudulenta con contadores del mismo Código); *Pueblo v. Ramos Rivas*, 171 D.P.R. 826 (2007) (una ley general y una ley especial: disposiciones sobre reincidencia en el Código Penal *vis a vis* disposiciones sobre reincidencia en la Ley de Sustancias Controladas).

Penal, 33 L.P.R.A. sec. 4696, entre las cuales se encuentra, como explicamos antes, la libertad a prueba regulada por la Ley de Sentencia Suspendida, *supra*. Art. 53 del Código Penal, 33 L.P.R.A. sec. 4681. Sin embargo, el mismo artículo que penaliza la posesión ilegal en la Ley de Sustancias Controladas, *supra*, crea un mecanismo de libertad a prueba que a todas luces parece estar disponible en el caso de autos. Entonces, ¿cuál de estos dos mecanismos se debe utilizar cuando se procesa criminalmente a un individuo por posesión ilegal de sustancias controladas? Este supuesto conflicto entre los mecanismos descritos evidencia un concurso aparente de disposiciones penales. No obstante, como veremos a continuación, el mismo queda resuelto por el principio de especialidad.

La Ley de Sentencia Suspendida se creó para establecer en los tribunales de justicia de Puerto Rico un sistema general de libertad a prueba. 34 L.P.R.A. sec. 1026. A tenor de lo anterior, se diseñó el estatuto con una gran cobertura haciendo sus beneficios disponibles para casi todos los delitos graves de tercer y cuarto grado, así como sus tentativas y las tentativas de delitos de segundo grado; quedando expresamente excluidos sólo un limitado número de delitos. 34 L.P.R.A. sec. 1027. Debemos también recordar que con la aprobación del nuevo Código Penal de 2004, las disposiciones de la Ley de Sentencia Suspendida quedaron incluidas en la parte general del Código al éste hacer referencia expresa a dicho estatuto como regulador del

sistema general de libertad a prueba. Art. 53 del Código Penal, 33 L.P.R.A. sec. 4681.

De otra parte, el artículo 404 de la Ley de Sustancias Controladas establece normas detalladas exclusivamente para lidiar con la posesión ilegal de sustancias controladas. 24 L.P.R.A. sec. 2404. Allí se establece: la conducta constitutiva de delito; la pena para un primer ofensor y para el reincidente; un programa de desvío con beneficios particulares que podrían incluir la eventual exoneración del individuo; penas alternativas de multa y prestación de servicio comunitario; y disposiciones relacionadas a la revocación del programa de desvío y las penas alternativas. *Id*.

Luego de examinar las disposiciones en concurso, debemos concluir que los mecanismos de libertad a prueba del artículo 404 de la Ley de Sustancias Controladas, *id.*, y de la Ley de Sentencia Suspendida, *supra*, tienen una relación de especie a género. En otras palabras, el programa de desvío del artículo 404 es una disposición de carácter especial frente a las disposiciones del sistema de sentencias suspendidas, las cuales son disposiciones de carácter general de la pena alternativa de libertad a prueba.

Nuestra conclusión se fundamenta en la especificidad con la que el legislador reguló la posesión de drogas —en atención al notorio problema de drogadicción que aqueja a nuestra sociedad— en el artículo 404 de la Ley de Sustancias Controladas. 24

L.P.R.A. sec. 2404. Como parte del abarcador esquema de regulación establecido en dicha ley, la Legislatura optó por incluir todas las disposiciones ya discutidas en relación a la posesión ilegal de sustancias controladas, a pesar de que existían disposiciones similares de carácter general en la Ley de Sentencia Suspendida, *supra*. A tenor de nuestra posición, el profesor Ernesto L. Chiesa Aponte comenta:

> [Bajo el artículo 404 se] establece un sistema peculiar de libertad a prueba, distinto al establecido en la Ley de Sentencias Suspendidas . . . . En éste, que podríamos llamar **'régimen general de probatoria'**, el acusado es sentenciado, aunque con los beneficios de libertad a prueba. En el **sistema especial** dispuesto en la Ley de Sustancias Controladas, el Tribunal sin sentenciar al acusado suspende el procedimiento para someter al acusado, bajo la[s] condiciones correspondientes, a un término de libertad a prueba . . . .

E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. III, Ed. Forum, Colombia, 1993, pág. 584 (Énfasis suplido).

Nuestra posición es consistente con la emitida recientemente por este Foro en *Pueblo v. Ramos Rivas*, *supra*. En aquella ocasión examinamos el concurso aparente de leyes entre las disposiciones sobre reincidencia de los artículos 61 y 62 del Código Penal de 1974, 33 L.P.R.A. secs. 3301-02 (2001), y las disposiciones sobre reincidencia del artículo 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. En virtud del principio de especialidad, y por la especificidad con la que se regulan los delitos en la Ley de Sustancias Controladas, decidimos entonces que cuando todos los delitos previos por los que se alega

reincidencia contra una persona son delitos graves incluidos en dicha ley u otra ley de los Estados Unidos relacionada a sustancias controladas, las disposiciones sobre reincidencia de la Ley de Sustancias Controladas aplican con exclusividad y desplazan las contenidas en el Código Penal. *Pueblo v. Ramos Rivas*, *supra*.

De otra parte, a poco examinamos el historial legislativo de la Ley de Sustancias Controladas, *supra*, se hace evidente que los beneficios adicionales que brinda el programa de desvío del artículo 404 demuestran que el legislador adoptó una política pública rehabilitadora especial –y distinta a la del sistema general de sentencias suspendidas– para tratar a las personas que incurran en el delito proscrito por el referido artículo. A esos efectos, el Informe Conjunto de las Comisiones de lo Jurídico Penal y de Salud y Bienestar del Senado sobre el P. de la C. 1323 (posteriormente aprobado como la Ley de Sustancias Controladas), 7 de junio de 1971, 3$^{ra}$ Sesión Ordinaria, 6$^{ta}$ Asamblea Legislativa, págs. 20-21, expresa:

> . . . de ahí también que la Ley contenga los mecanismos necesarios para propender a la rehabilitación de los muchos infortunados que sumidos temporalmente en la adicción, demuestren su determinación de reconstruir sus vidas y observar en lo sucesivo una conducta acorde con las normas sociales que rigen nuestra comunidad.
>
> Por ello el proyecto contiene disposiciones que ofrecen al poseedor de sustancias controladas para consumo propio, que sea encausado, la oportunidad de acogerse por una primera infracción al sistema de libertad a prueba, y que al así hacerlo satisfactoriamente, se gane el derecho a quedar finalmente exonerado, y libre de las incapacidades que normalmente acompañan a la

convicción por otros delitos. Se logra de esta forma humanizar en lo posible, el alcance de la ley.

Conforme a dicha visión rehabilitadora hemos expresado que el artículo 404 "[r]econoce la realidad científica de que el adicto no se cura con reclusión en presidio sino con tratamiento". *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407, 409 (1975). De manera que su programa de desvío pretende atender el delicado problema de la adicción a drogas en Puerto Rico para facilitar la rehabilitación de los imputados de delito, evitar la reincidencia y lograr nuevamente su integración a la sociedad. *Ford Motor Credit v. ELA*, *supra*, pág. 10.[73] Ante el texto claro de la ley no tenemos facultad para menospreciar su letra. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 214 (1990). Por lo que habiendo el legislador decidido utilizar este programa especial para enfrentar y tratar a los acusados de posesión ilegal de sustancias controladas, los tribunales no debemos dar la espalda a tal mandato legislativo.

Tampoco podemos descartar su aplicación invocando la discreción judicial, pues si están presentes los elementos necesarios para que aplique el programa de

---

[73] Otro esfuerzo importante en la lucha contra las drogas es el exitoso Programa de Salas Especializadas en Casos de Sustancias Controladas ("Drug Courts") de la Rama Judicial. *Véase*, *Informe Anual de la Rama Judicial de Puerto Rico*, 2007-08, págs. 9-11. Este programa, el cual está dirigido por un enfoque de justicia terapéutica, está disponible para individuos en libertad a prueba bajo el artículo 404(b) de la Ley de Sustancias Controladas y la Regla 247.1 de Procedimiento Criminal, pero no bajo el sistema de sentencias suspendidas. *Véase* Art. 6, *Guía Uniforme para la Operación del Programa de Salones Especializados en Casos de Sustancias Controladas* (Agosto 2008).

desvío del artículo 404 y el juzgador determina que el imputado debe recibir los beneficios de una libertad a prueba, tiene que concederle dicho privilegio bajo el indicado programa de desvío, por mandato del principio de especialidad.[74] En cambio, cuando la libertad a prueba del artículo 404 no sea aplicable, por ejemplo porque el imputado de posesión ilegal ser reincidente, el juzgador puede utilizar las disposiciones generales sobre sentencia suspendida para otorgarle la libertad a prueba, según dispone la propia Ley de Sustancias Controladas. 24 L.P.R.A. sec. 2414. En ese caso ya no estaríamos ante un concurso aparente de leyes debido a que el asunto quedaría regulado por una sola disposición.

Aunque la Procuradora General reconoce que la Ley de Sentencia Suspendida, *supra*, tiene un "carácter más general", sostiene que tanto dicha legislación como la Ley de Sustancias Controladas, *supra*, son leyes especiales. Asimismo arguye que operan de forma

---

[74] Sobre la importancia de la que están revestidas las concesiones de libertad a prueba, hemos expresado:

"Los magistrados de instancia deben mantener presente que la determinación de conceder o no a un convicto de delito los beneficios de la Ley de Sentencia Suspendida *es una sumamente delicada e importante que requiere el ejercicio de un alto grado de sensibilidad judicial*. En la misma está en juego nada más y nada menos que la libertad de un ser humano quien, no obstante haber sido convicto de la comisión de un delito, tiene por mandato legislativo -*y sujeto al ejercicio de una juiciosa y sana discreción judicial*- la oportunidad de regenerar su vida dentro de la libre comunidad y así convertirse en un ciudadano útil para nuestra sociedad". *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 217 (1990) (Énfasis en el original).

paralela y no subsidiaria ya que ambas ofrecen penas alternativas a la reclusión, y por ello el tribunal puede aplicar cualquiera de las dos. No nos convence su postura.

En primer lugar, en la presente controversia sólo hay una ley especial, a saber, la Ley de Sustancias Controladas, *supra*. Debemos aclarar que el concepto de ley especial bajo el principio de especialidad que hemos discutido, es distinto a la llamada "ley penal especial". Esta última es simplemente aquella ley penal que ha sido redactada fuera del Código Penal; pero no se relaciona al concurso aparente de leyes. *Véase* Nevárez Muñiz, *Derecho Penal Puertorriqueño*, *op. cit.*, pág. 138. Ciertamente la Ley de Sentencia Suspendida, *supra*, y la Ley de Sustancias Controladas, *supra*, fueron adoptadas como leyes penales especiales por no estar dentro del Código Penal. Sin embargo, en cuanto al concurso aparente de disposiciones penales que suscitó el presente caso, no podemos concluir que ambas leyes sean especiales. El examen de éstas bajo el principio de especialidad, como parece admitir la propia Procuradora, nos muestra la relación de especie a género que éstas tienen entre sí.

En segundo lugar, el hecho de que ambas leyes tengan como factor común el proveer mecanismos de libertad a prueba como pena alternativa a la reclusión, no significa que éstas "operen de forma paralela" y el tribunal pueda discrecionalmente utilizar una u otra como concluye la Opinión mayoritaria. Por el contrario,

es precisamente dicho factor común el que provocó el concurso aparente de las disposiciones que hoy examinamos. En este caso el concurso se disipa mediante el principio de especialidad según ordena el artículo 12 del Código Penal, 33 L.P.R.A. sec. 4640, teniendo como resultado la aplicación de una sola de las disposiciones en concurso: el artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404.

IV.

En resumidas cuentas, es nuestro criterio que cuando un individuo viola el artículo 404 de la Ley de Sustancias Controladas y, estando disponible el programa de desvío del mismo artículo, el tribunal estima que reúne los requisitos para disfrutar de una libertad a prueba, el foro primario tiene que concederle la libertad a prueba a través del referido programa de desvío; no una libertad a prueba bajo el estatuto general de sentencias suspendidas.

En el caso de autos el Tribunal de Primera Instancia declaró culpable al peticionario de dos cargos bajo el referido artículo 404 y lo sentenció a tres años de prisión, aunque le concedió una libertad a prueba bajo la Ley de Sentencia Suspendida, *supra*, sujeto a que recibiera tratamiento para su adicción a drogas. Ello a pesar de que el peticionario había solicitado los beneficios de una libertad a prueba bajo el artículo 404 por no ser reincidente. En atención a todo lo anterior, es forzoso concluir que erró el Tribunal de Primera Instancia al negar la solicitud del peticionario; así

como también erró el Tribunal de Apelaciones al confirmar su dictamen.

Devolvería el caso al foro primario para que conceda al peticionario los beneficios del programa de desvío bajo los preceptos del artículo 404 de la Ley de Sustancias Controladas. 24 L.P.R.A. sec. 2404(b)(1). No obstante, una mayoría de este Tribunal confirma la sentencia recurrida invocando un razonamiento errado. Por ello disiento.

Anabelle Rodríguez Rodríguez<br>
Juez Asociada