Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| NANCY FIGUEROA PINEO<br><br>RECURRIDA<br><br>V.<br><br>VLADIMIR HARRIS VILLANUEVA<br><br>PETICIONARIO | KLCE202301175 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.:<br>LA2023-0650<br><br>Sobre:<br><br>ORDEN DE PROTECCIÓN LEY NÚM. 284-1999 |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de diciembre de 2023.

Comparece el Sr. Vladimir Harris Villanueva (en adelante, Sr. Harris o Peticionario) ante este Tribunal y mediante una *Petición de Certiorari* nos solicita que revoquemos una *Orden de Protección* expedida en su contra por el Tribunal de Primera Instancia, Sala Municipal de Caguas (en adelante, TPI) el 22 de septiembre de 2023. En el referido dictamen el TPI expidió una Orden de Protección al amparo de la Ley Contra el Acecho en Puerto Rico, *infra*, con vigencia de 22 de septiembre de 2023 hasta el 22 de marzo de 2024.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del recurso.

**I.**

El 7 de septiembre de 2023, el Sr. Harris y la Sra. Nancy Figueroa Pinedo (en adelante, Sra. Figueroa) se comunicaron por llamada telefónica para discutir el estatus de un trabajo por el cual el Sr. Harris había contratado a la Sra. Figueroa. Luego de una acalorada discusión, la Sra. Figueroa acudió el próximo día al cuartel de la Policía. Posteriormente, se celebró una vista *ex parte* en la cual se otorgó una orden provisional de

protección a la Sra. Figueroa en contra del Sr. Harris, y se citó la celebración de una vista final para el 22 de septiembre de 2023. En esta vista final, la Sra. Figueroa compareció nuevamente por derecho propio, mientras que el Sr. Harris compareció con representación legal.

Según surge de la regrabación de la vista, la Sra. Figueroa reiteró lo que había testificado en la vista *ex parte*, que no se sentía segura en la relación laboral con su cliente.[1] Relató que luego de una llamada, donde le notificó al Sr. Harris que no había culminado el trabajo por el cual fue contratada, que este la insultó y amenazó, advirtiéndole que conocía donde esta vivía, y que aunque vivía en una urbanización de control acceso la podía esperar afuera.[2] Luego testificó que recibió una llamada de una agente de la Policía y de la representación legal del abogado del Sr. Harris. La Sra. Figueroa narró que en la llamada se le presentó un acuerdo de transacción para culminar la relación contractual entre ella y el Sr. Harris, a cambio de que esta desistiera de la orden de protección. Sin embargo, no aceptó la oferta porque se sintió nerviosa y presionada a aceptarla, en adición a que no quería abandonar el proceso de la orden de protección.[3] Además, y como contestación a preguntas de la Juez, la Sra. Figueroa narró como en la madrugada del 8 de septiembre —entiéndase una horas después de la llamada donde alega fue amenazada— recibió varias llamadas de un número desconocido, las cuales no contestó.[4]

Por otro lado, el Sr. Harris testificó que nunca llamó a la Sra. Figueroa en la madrugada del 8 de septiembre de 2023, y como prueba presentó un registro de llamadas de la compañía telefónica.[5] Como consecuencia, la Juez indagó sobre el origen del registro, a lo cual el Sr. Harris contestó que fue él mismo quien descargó el registro del portal de la compañía y que solo tenía ante sí el registro del 7 y 8 de septiembre de

---

[1] Regrabación de la Vista del 22 de septiembre de 2023, min. 2-3.
[2] *Id.*
[3] Regrabación de la Vista del 22 de septiembre de 2023, min. 3:30 – 5. (La Sra. Figueroa reiteró su nerviosismo y su interés de continuar con la orden en el min. 18-21 porque temía por su seguridad).
[4] Regrabación de la Vista del 22 de septiembre de 2023, min. 17.
[5] Regrabación de la Vista del 22 de septiembre de 2023, min. 22-25.

2023.[6] Posteriormente, y como respuesta a preguntas de su abogado, el Sr. Harris testificó que nunca insultó ni amenazó a la Sra. Figueroa, que la razón por la cual conocía donde vivía era porque ella trabajaba desde su hogar y había ido a pagarle por su trabajo, y que la disputa entre ellos respondía a un incumplimiento de contrato, por lo que su enojo era justificado.[7]

Luego de escuchar ambos testimonios, el TPI expidió la orden de protección en contra del Sr. Harris con una vigencia de seis (6) meses, esto es, de 22 de septiembre de 2023 al 22 de marzo de 2024. Para ello, y luego de aquilatar la prueba presentada, el TPI realizó las siguientes determinaciones de hechos:

> Peticionaria insiste en sus alegaciones contra su otrora cliente, el aquí peticionado, consistente en insultos y amenazas, así mismo, luego de expedida la orden ex parte existió interferencia indebida del peticionado a través de su abogado para que la peticionaria dejare sin efecto la orden de protección. Luego de escuchar al peticionado, el tribunal queda convencido que amerite que se extienda por 6 meses adicionales la presente orden.

En desacuerdo con la orden expedida, el Sr. Harris alega que:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA MUNICIPAL DE CAGUAS AL EXPEDIR LA ORDEN DE PROTECCIÓN LA 2023-0650 AL AMPARO DE LA LEY NÚM. 284-1999 A FAVOR DE LA SRA. NANCY FIGUEROA PINEDO A PESAR DE NO EXISTIR LOS ELEMENTOS NECESARIOS PARA LA EXPEDICIÓN DE ESTA.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA MUNICIPAL DE CAGUAS AL CONCEDER UN REMEDIO BAJO LA [sic] LEY NUM. 284-1999, CON LAS DETERMINACIONES DE HECHOS ESBOZADOS EN LA ORDEN FINAL CONCEDIDA.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA MUNICIPAL DE CAGUAS AL INDICAR EN LAS DETERMINACIONES DE HECHO QUE EL PETICIONADO REALIZO UNA DETERMINACIÓN INDEBIDA MEDIANTE SU REPRESENTACIÓN LEGAL Y PRESENTAR PRUEBA MEDIANTE LA VOZ DEL TRIBUNAL.

---

[6] *Id.*
[7] Regrabación de la Vista del 22 de septiembre de 2023, min. 29-32.

Este tribunal concedió un término de diez (10) días para que el recurrido mostrase causa para no expedir el auto y revocar. Transcurrido ese término sin recibir su comparecencia procedemos a discutir el marco jurídico aplicable a la controversia planteada y resolvemos de conformidad.

**II.**

**A. Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera Gómez v. Arcos Dorados Puerto Rico,* 2023 TSPR 65, 212 DPR ____; *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

De igual modo, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, delimita los criterios para la expedición de un auto de certiorari. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera Gómez v. Arcos Dorados Puerto Rico, supra*. La aludida regla permite que

el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *Íd.*; *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra,* dispone los siguientes criterios:

**A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G**. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Id*. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Id*.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Id*.; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material,

concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *Id.* pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de certiorari y ejercer nuestra función revisora.

## B. Estándar de revisión

De acuerdo con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". En virtud de esta norma, "los tribunales apelativos otorgan gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *SLG Torres-Matundan v. Centro de Patología*, 193 DPR 920, 933 (2015). Esta deferencia responde a que el foro primario es "quien ve y escucha a los testigos y, por ende, está en mejor posición para evaluar y aquilatar la prueba presentada en el juicio". *Id., pág. 933; Laboy Roque v. Pérez y otros*, 181 DPR 718, 744 (2011). En el caso del foro apelativo solo tiene ante sí "los récords mudos e inexpresivos". *Muñiz Noriega v. Muñiz Bonet*, 177 DPR 967, 987 (2010); *Rivera Torres v. Diaz López*, 207 DPR 636, 658 (2021).

Ahora bien, la deferencia a las determinaciones de hechos del foro primario no es absoluta. Los foros apelativos solo pueden intervenir con las determinaciones de hechos del Tribunal de Primera Instancia si demuestran que "el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto". *Gómez Márquez v. Periódico El Oriental*, 203 DPR 783, 793 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013). Esta norma permite considerar el proceso revisor en dos categorías principales. Para examinar si media pasión, prejuicio o parcialidad, "debemos verificar primordialmente si el juez de

primera instancia cumplió su función de adjudicar de manera imparcial", en cuyo caso podemos descansar en las determinaciones de hecho. *Id.*

Por otro lado, "el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal". *Id.* Así pues, existe un error manifiesto "cuando la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Id*; *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).

### C. Ley contra el acecho en Puerto Rico, Ley 284-1999, según enmendada

La Ley 284, *supra*, provee mecanismos para proteger debidamente a las personas que son víctimas de acecho. Artículo 2, 33 LPRA sec. 4013. Su objetivo es "tipificar como delito y penalizar todo patrón de conducta de acecho, que induzca temor en el ánimo de una persona razonable y prudente de sufrir algún daño físico en su persona, sus bienes y/o en la persona de un miembro de su familia". *Exposición de Motivos* de la Ley 284, *supra*. Esta legislación "reafirma la política pública del Gobierno de Puerto Rico de luchar contra cualquier tipo de manifestación de violencia que atente contra los valores de paz, seguridad, dignidad y respeto que se quieren mantener para nuestra sociedad". *Id.*

Cónsono con lo anterior, el Artículo 3(a) de la Ley 284, *supra*, define acecho en los siguientes términos:

> (a) **"Acecho"** — Significa una conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas, verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona, **se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia.** (Énfasis nuestro). 33 LPRA sec. 4013.

A su vez, el Artículo 4 de la precitada ley tipifica el delito de acecho de la siguiente manera:

> Toda persona que **intencionalmente manifieste un patrón constante o repetitivo de conducta de acecho dirigido a intimidar a una determinada persona a los**

> **efectos de que ella, o cualquier miembro de su familia podría sufrir daños, en su persona o en sus bienes**; o que mantenga dicho patrón de conducta a sabiendas de que determinada persona razonablemente podría sentirse intimidada incurrirá en delito menos grave. (Énfasis nuestro). 33 LPRA sec. 4104.

En cuanto al patrón de conducta persistente, el Artículo 3 (b) del estatuto preceptúa lo siguiente:

> Significa realizar en dos (2) o más ocasiones actos que evidencian el **propósito intencional de intimidar a determinada persona o a miembros de su familia**. (Énfasis nuestro). 33 LPRA sec. 4013.

Asimismo, define *intimidar* en el Artículo 3(f) como:

> **[T]oda acción o palabra que manifestada repetidamente infunda temor en el ánimo de una persona prudente y razonable** a los efectos de que ella, o cualquier miembro de su familia pueda sufrir daños, en su persona o en sus bienes, y/o ejercer presión moral sobre el ánimo de ésta para llevar a cabo un acto contrario a su voluntad. (Énfasis nuestro). 33 LPRA sec. 4013.

Cabe destacar que, en su *Exposición de Motivos* la Ley 284, *supra,* dispone que el acecho constituye una actividad criminal compuesta de una serie de actos que al examinarse pueden parecer un comportamiento legal tal como enviar flores, escribir cartas de amor o esperar por una persona fuera de su lugar de trabajo o de su casa. No obstante, estos actos por sí solo no constituyen acecho. Ahora bien, tales "actos unidos a intentos de atemorizar, intimidar o hacer daño a una persona, o a miembros de su familia o a su propiedad, pueden constituir un patrón de conducta ilegal". *Exposición de Motivos* de la Ley 284, *supra*.

La orden de protección al amparo de esta ley es un mecanismo rápido y ágil que ampara a las personas que son víctimas de acecho.

Esta orden de protección es un remedio civil que puede solicitar cualquier persona que haya sido víctima de acecho, o de conducta constitutiva del delito de acecho, sin que sea necesario la presentación previa de una denuncia o acusación. (Énfasis nuestro). Art. 5 (a), 33 LPRA sec. 4015. A su vez, un patrono puede solicitar una orden de protección a favor de un empleado si, dicho empleado es o ha sido víctima de acecho o de conducta constitutiva del delito de acecho y los actos han ocurrido en el

lugar de trabajo o en sus inmediaciones. Art. 5 (b), 33 LPRA sec. 4015. El tribunal podrá emitir una orden de protección cuando determine que existen motivos suficientes para creer que la parte peticionaria ha sido víctima de acecho.  Art. 5, 33 LPRA sec. 4015. Cabe destacar que, el Tribunal de Apelaciones podrá revisar las órdenes de protección de conformidad a los criterios establecidos en ley. *Id.*

III.

El Sr. Harris nos solicita que *expidamos* el auto de *Certiorari* y revoquemos la orden de protección expedida por el TPI en su contra. Reclama que el TPI erró en sus determinaciones de hechos en la *Orden de Protección* y, por tanto, erró al expedirla ya que, según el Peticionario, no se cumplió con el patrón de conducta de acecho que requiere el estatuto, entiéndase que ocurran dos o más situaciones intimidantes. Esto último, porque interpreta el Sr. Harris que de los autos no se desprende prueba de otro incidente entre las partes, además de la llamada telefónica, que expusiera la Sra. Figueroa a sufrir un daño emocional, a su persona o propiedad.

Luego de analizadas las alegaciones del peticionario, y luego de haber escuchado detenidamente, y en su totalidad, la regrabación de la vista, hemos decidido *no expedir* el auto solicitado. No encontramos fundamentos jurídicos que nos motiven a expedir el auto de *certiorari* de conformidad a la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. De igual modo, no encontramos los elementos requeridos para determinar que el TPI actuó de forma arbitraria, caprichosa, o incurrió en un craso abuso de discreción, o aplicación errónea de la ley.

**IV.**

Por los fundamentos antes expuestos, *denegamos* la expedición del auto de *certiorari.*

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones