Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| TILSA MAGALI TRINIDAD AYALA; LIMARIE MÁRQUEZ TRINIDAD<br><br>Recurridas<br><br>V.<br><br>JENNIFER SHANG TRINIDAD AYALA<br><br>Peticionaria | TA2025CE00120 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm.: LU2020RF00014<br><br>Sobre: Custodia- Monoparental o Compartida |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de julio de 2025.

Comparece ante nos, Jennifer Shang Trinidad Ayala (en adelante, "la peticionaria"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Resolución Interlocutoria"* emitida y notificada el 27 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante la referida determinación, dicho tribunal, ordenó que la peticionaria debía viajar a Puerto Rico para compartir con el menor MEJ luego del 14 de julio de 2025 bajo la supervisión de las recurridas. Todo, dentro de un caso sobre custodia, instado por Tilsa Magali Trinidad Ayala y Limarie Márquez Trinidad (en lo sucesivo, "las recurridas").

Por los fundamentos que expondremos a continuación, *denegamos* la *expedición* del recurso presentado.

A continuación, esbozaremos un resumen del tracto procesal relevante a la controversia que hoy nos ocupa.

**I.**

La cuestión litigiosa tiene su génesis en la *"Demanda Solicitando Vista de Emergencia dentro de 24 horas, se otorgue Custodia Provisional*

*Urgente y Orden de Producción Inmediata de Menor por Peligro Inminente,"* presentada por las recurridas el día 1 de junio de 2020. Mediante esta, solicitaron la custodia de emergencia del menor MEJ por alegadamente estar en peligro su vida. Alegaron que eran las tías del referido menor, y que éste había estado bajo su custodia provisional desde que aproximadamente tenía tres (3) meses de nacido. Particularizaron, que dicho menor nació en St. Croix, pero que fue traslado a Puerto Rico por la peticionaria (su madre) debido a que presentaba unos problemas de salud.

Sostuvieron, que desde entonces la peticionaria dejó al menor a su cargo y años después regresó para trasladarlo a St. Croix. Aseveraron, que el referido traslado significó un peligro para la vida y el bienestar del menor, debido a que recibe malos tratos y no tiene ningún vínculo emocional con la peticionaria. Finalmente, entre otras cosas, peticionaron que se celebrara una vista de emergencia; se les concediera la custodia del menor; y se tomaran medidas protectoras en su beneficio.

Tras varias incidencias procesales no pertinentes al asunto ante nuestra consideración, el 29 de septiembre de 2021, una Trabajadora Social rindió un *"Informe Social Forense"*[1] para el caso en cuestión. Mediante este, recomendó que se le concediera la custodia provisional del menor a las recurridas. A su vez, recomendó que se estableciera un "*Plan de Relaciones Materno Filiales,"* a través del cual la peticionaria pudiera relacionarse con su hijo menor. El 22 de octubre de 2021, las recurridas notificaron al foro primario su conformidad con lo expuesto en el aludido informe. Por su parte, el 3 noviembre de 2021, la peticionaria notificó la intención de impugnar en su totalidad el *"Informe Social Forense."*

Antes de adjudicarse la impugnación del *"Informe Social Forense,"* presentada por la peticionaria, el 27 de junio de 2023, el foro recurrido celebró una vista. A través de esta, las partes llegaron a una serie de acuerdos para propiciar las relaciones maternofiliales. Posteriormente, y

---

[1] Surge de la *"Minuta"* notificada el 21 de marzo de 2025, que el foro recurrido ordenó a la Trabajadora Social, que realizara una actualización de dicho informe debido al tiempo que había trascurrido desde su redacción.

tras la ocurrencia de varios desacuerdos entre las partes sobre las fechas de las relaciones maternofiliales, el 29 de julio de 2024, la peticionaria presentó *"Moción Expresando Posición sobre Fechas de Viajes."* A través de esta, informó que las partes acordaron una serie de fechas para que el menor viajara a Worcester y Santa Cruz. El 30 de julio de 2024, el foro recurrido autorizó los viajes pactados.

Así las cosas, el 21 de mayo de 2025, la peticionaria presentó *"Moción sobre Fechas de Viajes del Menor."* En esencia, alegó que en el año 2024 el foro recurrido permitió que el menor viajara a Santa Cruz de conformidad a la recomendación emitida por la Trabajadora Social. A esos fines, presentó un itinerario con las fechas de verano que sugería para que el menor viajara a Santa Cruz.

En respuesta, el 27 de mayo de 2025, las recurridas presentaron *"Moción de Cumplimiento de Orden."* En síntesis, no se opusieron a que el menor viajara a Santa Cruz. Únicamente recomendaron otras fechas a las sugeridas por la peticionaria. En la alternativa, solicitaron al foro recurrido que evaluara la posibilidad de que la peticionaria viajara a Puerto Rico a compartir con el referido menor.

En atención de los escritos presentados, el 27 de mayo de 2025, el foro recurrido notificó la *"Resolución Interlocutoria"* que hoy nos ocupa. En lo atinente, ordenó que la peticionaria debía viajar a Puerto Rico para compartir con el menor luego del 14 de julio de 2025, bajo la supervisión de las recurridas.

En desacuerdo, el 5 de junio de 2025, la peticionaria presentó *"Moción de Reconsideración sobre Viaje del Menor*," la cual fue declarada *No Ha lugar* en la misma fecha. Oportunamente, el 7 de julio de 2025, la peticionaria presentó una *"Solicitud de Certiorari"* ante este Tribunal. Mediante esta, señaló el siguiente error:

> Erró el Tribunal de Primera Instancia al negarse a autorizar y luego a reconsiderar su negativa al viaje anual a Santa Cruz para las relaciones maternofiliales, alterando onerosamente para el menor, su madre y tres (3) hermanas la recomendación de la TS en contra de la ley del caso.

Así las cosas, el 10 de julio de 2025, le concedimos a las recurridas hasta el siguiente día a la 1:00pm para que presentaran su postura sobre la *"Solicitud de Certiorari."*

En cumplimiento de lo ordenado, el 11 de julio de 2025, las recurridas presentaron *"Moción Solicitando Desestimación y/o Oposición de Certioraris."*

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del asunto ante nuestra consideración.

**II.**

**A.**     **Recurso de *Certiorari*:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág.

62-63, 215 DPR \_\_\_\_ (2025), delimita los criterios para la expedición de un auto de *certiorari*. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.;

*Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *íd.* pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**III.**

La peticionaria recurre ante nos a los fines de solicitarnos que revoquemos la *"Resolución Interlocutoria,"* por medio de la cual el foro recurrido denegó su petición de que el menor MEJ viaje a Santa Cruz para compartir con ella. Por el contrario, determinó que la peticionaria debía viajar a Puerto Rico para relacionarse con su hijo.

Por su parte, las recurridas sostiene en apretada síntesis que deberíamos declarar *No Ha Lugar* la solicitud de revocación presentada por la peticionaria.

Es conocido, que el tribunal de instancia tiene gran flexibilidad y discreción para manejar los casos presentados ante sí. Véase, *BPPR v. SLG Gómez-López*, supra, pág. 333-334. En vista de lo anterior, los foros apelativos debemos evitar intervenir con el curso ordinario de los casos que se ventilan ante el foro primario. De otra parte y en lo atinente, es política pública fielmente establecida, que el criterio rector de los casos en que existan menores involucrados se circunscribe en propiciar los mejores intereses de los referidos menores. Véase, *Jusino González v. Norat Santiago*, 211 DPR 855, 864-865 (2023). De manera que, los tribunales debemos resolver este tipo de casos bajo las consideraciones de garantizar

el interés óptimo de los menores. De igual modo, las partes en litigio deben siempre pensar en preservar dicho bienestar.

Según esbozamos, la única cuestión ante nuestra consideración se limita a una determinación interlocutoria sobre el compartir de verano del menor MEJ con su madre. Las otras controversias existentes entre las partes sobre la custodia y relaciones maternofiliales están todavía pendientes para su adjudicación en el foro recurrido, el cual tiene vista pautada para el 18 de agosto de 2025. Siendo así, el asunto exclusivo ante nos es uno atinente al manejo de caso del foro recurrido. Por lo cual, y al ejercer la sana discreción que nos ha sido conferida mediante la Regla 40, *supra,* concluimos que no vamos a intervenir en esta etapa de los procedimientos con el criterio del foro recurrido, por lo cual *denegamos* la *expedición* solicitada.

**IV.**

Por los fundamentos expuestos, *denegamos* la *expedición* del recurso de *certiorari* presentado por la peticionaria.

**Notifíquese inmediatamente** a las partes a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC) y por correo electrónico.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones